Hugh A. MINER, trustee in bankruptcy for Howard O. Bennett and Anna L. Bennett, Appellant-Respondent,

v.

Howard O. BENNETT, Defendant,

Anna L. Bennett, Respondent,

Herbert E. Bennett and Marva Bennett, Respondents-Appellants.

Nos. KCD 28778, KCD 28777.

Missouri Court of Appeals, Kansas City District.

Aug. 29, 1977.

Rehearing Denied Oct. 12, 1977.

Marvin L. Sharp, Stockard, Andereck, Hauck, Sharp & Evans, Trenton, for appellant.

R. Max Humphreys, Miller, Humphreys & Seidel, Trenton, for respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

This action began as a suit by the First National Bank of Milan, Missouri, to set aside a conveyance by Howard O. Bennett and Anna L. Bennett to Herbert E. Bennett and Marva Bennett on the grounds that the conveyance was made to defraud the bank as a creditor of Howard and Anna Bennett. While the suit was pending, Howard O. Bennett and Anna L. Bennett filed separate voluntary petitions in bankruptcy. Hugh A. Miner was appointed Trustee in Bankruptcy for the estate of each of the bankrupts and he was substituted as party plaintiff in the action. Defendants Herbert and Marva Bennett filed a counterclaim for a declaration of a constructive trust for their benefit for outlays made by them on the property involved. Upon trial, the court found the conveyance by Howard O. Bennett of his one-half interest in the property was a fraud upon his creditor and set aside the conveyance of his interest. The court found for defendant Anna L. Bennett with respect to the one-half interest conveyed by her. The Court found against Herbert and Marva on their counterclaim. The Trustee in Bankruptcy appealed from that portion of the decree finding in favor of Anna L. Bennett. Herbert and Marva appealed from that portion of the decree setting aside the conveyance to them of Howard's one-half interest. The appeals have been consolidated.

Herbert and Marva Bennett are husband and wife. Howard O. Bennett is their son.

Howard was married to Anna but their marriage ended in divorce in July 1972. Howard and Anna had four daughters, the eldest of whom was 16 years old at the time of the divorce.

Both Howard and Herbert farmed and raised livestock in the vicinity of Milan. Each conducted his operation separately. Howard and Anna lived on a farm known as the "Dodson place" and owned by Herbert.

The land which is the subject of the conveyance in controversy was acquired by Howard and Anna in three separate purchases, beginning in 1963. The first tract consisted of 333 acres and was purchased for around $50 per acre. A second tract of 89 acres was purchased for around $60 per acre. Herbert provided the $1,000 and $500 original payment on the respective purchases. In December, 1972, these tracts were subject to a deed of trust to secure an indebtedness of some $17,000 on the purchase price. Annual payments of $1,600 to $1,700 were required on the indebtedness. The third tract of 131 acres was purchased for around $60 per acre. It was subject to a deed of trust to secure an indebtedness amounting to around $5,750 in 1972, with annual payments of $700 to $800. ASC payments attributable to the "Dodson place" were used to meet the annual payments on the purchase money mortgages on the three tracts acquired by Howard and Anna.

Howard had banked with the First National Bank of Milan since 1951 and had made many loans there over the years, largely to buy cattle. On March 1, 1969, Howard owed the bank $46,700. On March 3, 1969, Anna signed a continuing guaranty agreement whereby she guaranteed the payment of existing and future obligations of Howard to the bank. According to John Rogers, Chairman of the bank board, and the man with whom Howard dealt, Anna signed the agreement at the bank. He explained it to her, she understood it and willingly signed it. According to Anna, Howard brought the agreement home and asked her to sign it and she did so.

On March 22, 1972, Howard executed a note to the bank for $80,000, payable in one year. The note was a consolidation of 19 or 20 prior notes. Howard gave the bank a chattel mortgage on 29 cows, 339 steers and heifers, 5 bulls, 359 hogs and 10 horses as security. A payment of $2,000 was made on the note in May, 1972. In May, 1973, a sale of horses produced $339.50, which was credited against the note.

On June 27, 1972, Howard signed a six-month note for $1,000 to the bank and on September 30, 1972 a 45-day note for $10,-333.34. No payment was made on either of these notes.

Anna's action for divorce was filed in April, 1972. A default decree was entered July 5, 1972. The decree adjudged the parties tenants in common of the three tracts of land involved here and an interlocutory decree of partition was entered. Anna continued to live with her children on the "Dodson place." Howard's whereabouts following the divorce are unclear.

According to Rogers, in December, 1972, the bank had asked Howard to start paying off his notes. The Board had told Rogers "not to let Howard have any more money, that he was getting a little top-heavy and I asked him to start reducing."

The circumstances surrounding the conveyance are somewhat sketchy. According to Howard, he was interested in saving the land for his children and he and his father discussed the situation. According to Anna, Howard told her that a payment on the mortgage was due and he had no money to pay it and she wanted the girls to have something out of it. Howard and Herbert consulted an attorney in Milan and he prepared a deed to convey the land from Howard and Anna to Herbert and Marva for a recited $10.00 and "other good and valuable considerations." The deed provided that the grantees assumed and agreed to pay the encumbrances on the land as part of the consideration for the conveyance. Some $22,000 was owed on the deeds of trust. Witnesses valued the land at between $78,-000 and $111,000 at the time of the conveyance. The deed was dated November 29, 1972, was acknowledged by Howard and Anna December 2, 1972 and filed for record December 4, 1972.

The attorney also prepared a trust agreement which the parties executed December 2, 1972. The trust agreement recited the conveyance and provided that the grantees would hold title to the land in trust for the benefit of the grantors and their minor children. By various provisions of the agreement, Howard and Anna, in effect, were given a life estate in the property, with the remainder to their children.

The trust agreement was not recorded. According to Herbert, "It wasn't anybody's business."

Herbert managed the property according to the agreement, placing the proceeds from the operation of the land in a special account, together with rental from the "Dodson place," from which he paid taxes, expenses, etc., and also provided for Anna and the children. A number of checks were drawn on the account payable to Howard "for labor."

Rogers read in the newspaper of the deed from Howard and Anna to Herbert and Marva and tried to get in touch with Howard, but could not locate him. Rogers went by the farm where the livestock covered by the chattel mortgage were supposed to be kept, but he could see they were not there. Eventually ten horses were located and sold and the proceeds applied on the note, but the remaining animals were never located. Rogers saw Howard about six months after the transfer of the land and asked about the transaction. Howard told him that "he did it to protect the land. He was afraid he would lose it."

The date on which the bank filed its action to set aside the transfer does not appear in the transcript. In September, 1974, Howard and Anna filed separate petitions in bankruptcy. Hugh A. Miner was appointed Trustee in Bankruptcy for each estate and he was substituted as party plaintiff in the action which came to trial in October, 1975. The trial resulted in a decree setting aside Howard's conveyance of

his one-half interest in the land and finding in favor of Anna and against Herbert and Marva on their counterclaim. The Trustee has appealed from the decree in Anna's favor. Herbert and Marva appealed from the decree setting aside Howard's conveyance of his interest.

■ The appeal of Herbert and Marva may be disposed of rather summarily. Basically their complaint is that equitable principles call for denial of relief to the Trustee as successor in interest to the bank. They acknowledge that a prima facie case was made against Howard, but argue that, because the bank did not take adequate steps to protect itself by verifying the existence of the livestock given as security for the loan or by demanding that Howard give a deed of trust on the land in order to secure its loans, the bank should be denied relief as against them. They argue that they were only trying to save the land which was in the family because of Herbert's efforts and assistance and that the conveyance for that purpose should not have been considered fraudulent.

This argument, offered without citation of relevant authority, is unconvincing. Given the concession of a prima facie case against Howard's transfer, the remote equities urged by Herbert and Marva afford no reason for overturning the trial court's conclusion on this issue.

The trustee contends that the decree of the trial court, insofar as it found in Anna's favor, is against the weight of the evidence and was the result of the trial court's erroneous application of the law.

■ Although appellant Trustee contends that there was evidence from which the trial court might have concluded that numerous of the frequently noted "badges of fraud" in cases such as this (*Allison v. Mildred,* 307 S.W.2d 447, 454[7] (Mo.1957); *Morris v. Holland,* 529 S.W.2d 948, 953[8, 9] (Mo.App.1975)) were present in this case, the one overriding factor which apparently was overlooked by the trial court and requires reversal of the decree in Anna's favor was the secret trust by which the grantors in the deed attempted to reserve for themselves and their children the benefits of the ownership of the property. "This court has set aside as fraudulent and void as to creditors absolute conveyances * * which in any manner concealed a secret trust." *Friedel v. Bailey,* 329 Mo. 22, 44 S.W.2d 9, 13 (Mo.1931). "As a general rule, a conveyance, which on its face contains no reservations, will be held either presumptively or conclusively fraudulent as to creditors where it is accompanied by a secret agreement between the parties, which reserves an interest, benefit, or advantage to the grantor, his family, or others inconsistent with the terms of the conveyance." 37 C.J.S. Fraudulent Conveyances, § 227, p. 1054 (1943). See *Munford v. Sheldon,* 320 Mo. 1077, 9 S.W.2d 907, 910[8] (1928).

■ Even if the secret reservation be given only presumptive effect, there was no explanation sufficient to avoid such presumption. The only explanation for the transaction was that it was based upon a desire to save the land for the children. Desirable as that consideration might be, it is not sufficient to avoid the effect which the law accords the secret reservation. There was no credible evidence of any capability on the part of the grantors to pay their obligations following the transfer. The assumption by the grantees of the mortgages in an amount equal to approximately one fourth of the value of the property was not an adequate consideration for the transfer. *Oldham v. Wright,* 337 Mo. 170, 85 S.W.2d 483, 485[1–6] (1935).

■ Anna argues that there was no showing that she was indebted to the bank because there was no proof that the bank notified her of its acceptance of the guaranty. However, when the guaranty is requested by the creditor, no notice of acceptance is required. That rule was recognized in the case of *Ireland v. Shukert,* 238 Mo.App 78, 177 S.W.2d 10, 16[10–12] (1944), cited and relied upon by respondent Anna. Here, although there was a conflict in the evidence as to where the guaranty was signed, it was requested by the bank.

■ She also argues that the guaranty was void as to her because it was not supported by consideration. The bank extended credit to Howard following the execution of the guaranty. The benefit to him was sufficient consideration to support Anna's guaranty contract. 38 C.J.S. Guaranty § 26 c., p. 1165 (1943).

Equities urged by Herbert and Marva on this appeal are also here urged in support of the decree in favor of Anna. Such claimed equities are not sufficient to support affirmance of the decree on that score.

Decree affirmed as to conveyance by *Howard O. Bennett* of his one-half interest in the land in question. Decree reversed as to conveyance by Anna L. Bennett of her one-half interest in the real estate. Remanded with direction to enter new decree as to Anna's interest, setting aside her conveyance of her interest in the property.

Affirmed in part. Reversed and remanded with directions in part.

All concur.