**In the Matter of Howard Oliver BENNETT, and Anna Lorraine Bennett, Bankrupts.**

Bankruptcy Nos. 74B–233–SJ, 74B–232–SJ.

United States Bankruptcy Court, W. D. Missouri, St. Joseph Division.

May 27, 1980.

Martin M. Bauman, St. Joseph, Mo., for claimants.

Marvin L. Sharp, Trenton, Mo., for trustee.

Hugh Miner, St. Joseph, Mo., trustee.

## ORDER DISALLOWING THE CLAIMS OF HERBERT O. AND MARVA L. BENNETT

DENNIS J. STEWART, Bankruptcy Judge.

The claims of Herbert O. and Marva L. Bennett, filed herein against the estate in bankruptcy of their son and daughter-in-law, arise out of the transfer to them on December 2, 1972, of certain realty [1] by the bankrupts. The trustee herein in bankruptcy later avoided the transfer as fraudulent and brought the property transferred into the estate herein in bankruptcy. See *Miner v. Bennett,* 556 S.W.2d 692 (Mo.App.1977). The claimants now base their claims against the estate upon mortgage, upkeep, and tax payments meantime made on the property so transferred.

The first objection made by the trustee to the allowance of these claims is that, in *Miner v. Bennett, supra,* the state trial court denied the counterclaim of the defendants (now claimants) Herbert O. and Marva L. Bennett for "taxes, upkeep and maintenance." In the hearings conducted herein by the court of bankruptcy, uncontradicted evidence to this effect was adduced by the trustee herein in bankruptcy.[2]

---

1. The following description of the transferred property is contained in the "trust agreement" between "Howard O. Bennett and Anna L. Bennett, of Sullivan County, Missouri, Parties of the First Part, and Herbert E. Bennett and Marva Bennett, husband and wife, Parties of the Second Part," dated December 2, 1972:

"The East 10 acres of the Southwest Quarter of the Southwest Quarter and the Southeast Quarter of the Southwest Quarter; the Southwest Quarter of the Southeast Quarter; and a strip of land 2 rods wide off the South side of the Southeast Quarter of the Southeast Quarter of Section 35, Township, Range 20; and also the Northwest Quarter of the Northeast Quarter of Section 2, Township 61, Range 20 (containing 131 acres, more or less);

"The Northeast Quarter of the Southwest Quarter; and the Southeast Quarter of the Southwest Quarter, except 1 acre lying North and West of Little East Locust Creek; and all that part of the Southwest Quarter of the Southwest Quarter lying East of Little East Locust Creek, which contains 10 acres, more or less, all in Section 31, Township 62, Range 19 (containing 89 acres, more or less);

"The North fractional half of the Northwest Quarter of Section 5; the North fractional half of the Northeast Quarter of Section 6, all in Township 61, Range 19; also the South half of the Southeast Quarter of Section 31 and the South half of the Southwest Quarter of Section 32, in Township 62, Range 19 (all in Sullivan County, Missouri)."

2. The trustee has adduced a copy of the "second amended answer and counter-claim"

Therefore, in respect to the claims for mortgage and taxes which predate the institution of the state court counterclaim, the defense of *res judicata* should prevail.[3] The claimants have adduced evidence in this court to the effect that the *two presuit payments* upon which the claims at bar are based were not submitted as part of the state court counterclaim. But, under the applicable legal rules, this is a distinction which makes no difference so long as the state court counterclaim purported to cover, as the language therefrom quoted above, all the mortgage and tax payments which had been made by them prior to the state court

action. For *res judicata* applies not only to those issues which were actually adjudicated in the former action, but those which *should have been* adjudicated as well.[4] Therefore, with respect to the claims which predate the state counterclaim, they must be denied as *res judicata*.[5]

As to claims for the mortgage and tax payments and for demonstrably necessary maintenance which post-date the filing of the state court counterclaim, they constitute payments made pursuant to the secret and unrecorded trust agreement which the state court, in *Miner v. Bennett, supra,* found to be unlawful and unenforceable

3. filed by Herbert E. Bennett and Marva Bennett against the trustee herein in bankruptcy in the state court proceedings in the Circuit Court of Sullivan County (Civil Action No. 719). As pertinent, it is alleged in that "second amended answer and counter-claim" that "they took title in good faith, made payments on the first mortgage since the date of the transfer and each year thereafter . . . paid taxes, upkeep and maintenance on said property and supervised said property from the time of said transfer and during the pendency of this litigation." Therefore, "Herbert E. Bennett and Marva Bennett pray the Court to impose a constructive trust upon said real estate and if the Court finds for naught on the part of the other defendants that this trust takes precedence over the claims of the Plaintiff and that their actual expenses of farm payments, taxes and other necessary expenses for the preservation of the property be made a lien upon said real estate." The trustee herein also adduced a copy of the order of the state trial court entered on January 15, 1976, and stating, as pertinent, that "(t)he Court further finds in favor of the Plaintiff and against all Defendants on all counter claims filed."

3. Just prior to the last adjourned hearing held by the court of bankruptcy on April 25, 1980, the claimants narrowed the compass of their claims to the following:

(1) A claim for $18,340.00 based upon a note executed by Howard Bennett on July 22, 1968, which purports on its face to be based upon "$1,000 to help on water system and A.S.C. payment on Dodson place."

(2) A claim for $3,000.00 based upon a note executed by Howard Bennett on November 10, 1970, "for cash to put in land and taxes."

(3) A claim for $1,738.00 based upon a check to the Bartlett Mortgage Company dated November 28, 1972, purporting to constitute a "loan payment" by Herbert Bennett on the "422 acres bought from Howard and Anna Bennett."

(4) A claim for $822.96 based upon a check executed by Herbert Bennett on January 2, 1973, to the county collector for "taxes."

(5) A claim for $743.75 based upon a check executed by Herbert Bennett on August 16, 1976, to Geraldine Foster for "$500 principal" and "$243.75 interest."

(6) A claim for $1,494.00 based upon a check executed on November 26, 1976, by Herbert Bennett to the Bartlett Mortgage Company for "principal and interest payment on farm."

(7) A claim for $2,107.00 based upon a check executed on December 10, 1976, by Herbert Bennett to the Bartlett Mortgage Company for "farm loan . . . 2,100 principal balance, 7.00 interest."

(8) A claim for $977.11 based upon a check executed on December 17, 1976, by Herbert Bennett to Joyce Sutton for "taxes in Pleasant Hill."

The transcript of the state court proceedings shows that it was instituted on July 23, 1975. Therefore, the first four claims listed above are *res judicata* on account thereof.

4. "The term res judicata is often used to denote . . . that such a judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim or demand . . . (and) the judgment operates as a bar—prevents relitigation of all grounds for, or defenses to, recovery that were then available to the parties before the particular court rendering the judgment, in relation to the same claim—regardless of whether all grounds for recovery or defenses were judicially determined." 1B Moore's Federal Practice para. 0.405(1), pp. 621–22 (1974).

5. See notes 2, 3, 4, *supra.* Under the considerations contained therein, there can be little doubt that the pre-July 23, 1975, claims are the same as those made against the trustee in the state court action.

and which pertinently provided that the bankrupts would pay the transferee claimants rent from which the mortgage, taxes, and upkeep would be paid by the latter.[6] In quintessential substance, therefore, the unrecorded trust agreement was one whereby the transferee claimants simply held bare title to the property, while beneficial ownership remained in the bankrupts, who were to continue to make the mortgage payments in the guise of rent to the transferees. Therefore, the trustee argues that the claim is barred because of the illegality of the trust agreement, other considerations of equity,[7] and because, if the transferees paid mortgages, taxes, and upkeep without being reimbursed by the bankrupts, they were simply volunteers. These arguments are all persuasive, but the court of bankruptcy need not parse the legal complexities involved in the propositions which underlie them, for it is fundamental that debts incurred by a bankrupt after the date of bankruptcy may not be allowed as claims against the then-pending bankruptcy estate.[8] Nor may the mortgage, tax, and upkeep expense after the date of bankruptcy be regarded as having conferred a benefit upon the estate in bankruptcy so as to be compensable as an administrative expense.[9] For these expenditures arose at a time when the real estate was held adversely, and wrongly so, to the estate in bankruptcy.

**6.** The "trust agreement" of December 2, 1972 (see note 1, *supra*), under the terms of which the transfer of the subject property was made from the bankrupts to the claimants pertinently provides that: "Parties of the Second Part (claimants) will hold said title to said lands for the use and benefit of the aforesaid minor children of their parents. They will manage said lands, permit First Parties (bankrupts) to rent and operate said Lands, and from the rents they will pay the taxes, indebtedness against said lands and for the general upkeep and maintenance of said lands, including any advancements they may make to pay off any outstanding liens or trust deeds. After payment of such expenses and advancements, such remainder, if any, will be by Second Parties used for the benefit of First Parties, or the survivor of them, and the four named children (of the First Parties), each of the said named children to share equally in the benefits so derived." In ruling on this "trust agreement," the Missouri Court of Appeals held that, "(a)s a general rule, a conveyance which on its face contains no reservations, will be held either presumptively or conclusively fraudulent as to creditors where it is accompanied by a secret agreement between the parties, which reserves an interest, benefit, or advantage to the grantor, his family, or others inconsistent with the terms of the conveyance" and that, "(e)ven if the secret reservation be given only presumptive effect, there was no explanation sufficient to avoid such presumption. The only explanation for the transaction was that it was based upon a desire to save the land for the children. Desirable as that consideration might be, it is not sufficient to avoid the effect which the law accords the secret reservation." 556 S.W.2d at 695.

**7.** One equitable consideration which is of considerable force and moment is that, if the parties acted according to their "trust agreement," see note 6 *supra*, (and no evidence has been adduced in the proceedings before this court to indicate otherwise), the claimants would have made payments for taxes, upkeep and the like only out of monies paid them by the bankrupts. In such an instance, having been fully reimbursed, they could not maintain successfully a claim against the bankruptcy estate.

**8.** A debt is not provable in bankruptcy when it "arises after the filing date." 3A Collier on Bankruptcy para. 63.27, p. 1902 (1975). Claims provable in bankruptcy are those "in existence when the petition was filed, and not . . . claims against the estate for expenses of administration." *In re Reliance Storage & Warehouse Co.*, 100 F. 619 (E.D.Pa.1900). See generally 3A Collier on Bankruptcy para. 63.04, p. 1773 et seq. (1975).

**9.** Even if somehow the services of the claimants could be said to have benefited the estate (and they were otherwise unreimbursed for them, but see note 7, *supra*, and did not attempt to hold the property adversely to the estate and wrongfully so), the administrative expenses would be payable ordinarily through the trustee and, in this case, the services performed by the claimants, if any, were simply as volunteers who might not be compensated. "Services are frequently volunteered . . . and the result, however beneficial to the estate, is a duplication of services and of claims for compensation. The Bankruptcy Rules, local rules and the courts have cooperated to discourage duplicate claims for compensation by withholding any compensation for services rendered without explicit authorization of the court." 3A Collier on Bankruptcy para. 62.05, p. 1430 (1975). The claimants could have avoided any expense after the date of bankruptcy by simply handing over the property to the trustee herein, to whom title had devolved.

To reward such wrongdoing by reimbursing the expenses thereof would set a ludicrous precedent.[10] It rather accords with principles of law and equity that those having the use and enjoyment of the property during this period of time should pay the rental value and necessary maintenance thereof.

It is therefore

ORDERED that the claims of Herbert O. Bennett and Marva L. Bennett be, and they are hereby, denied.

---

**10.** See note 9, *supra.* And, further, *no claim is properly made herein for any award of administrative expense.*