In the Matter of Mark Wayne KEENEN and Donna Lee Keenen, Debtors.

James F. B. DANIELS, Trustee and Carthage Farmers Exchange, Plaintiffs,

v.

Mark Wayne KEENEN, Donna Lee Keenen, Russell E. Adams and Velma Adams, Defendants.

Bankruptcy No. 81–02093–SW.
Adv. No. 82–0101–SW.

United States Bankruptcy Court,
W. D. Missouri,
Southwestern Division.

March 16, 1982.

James F. B. Daniels, Joplin, Mo., pro se.

Albert Johnston, Carthage, Mo., for Carthage Farmers Exchange.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT (1) DENYING THE DISCHARGE IN BANKRUPTCY OF THE DEFENDANTS MARK WAYNE KEENEN AND DONNA LEE KEENEN AND (2) AVOIDING THE TRANSFER OF JUNE 13, 1981, AND DIRECTING RETURN OF HALF OF THE PROPERTY TRANSFERRED, OR ITS EQUIVALENT IN VALUE, TO THE BANKRUPTCY ESTATE

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiffs complain for denial of the discharge in bankruptcy of the defendants Keenen and for turnover of transferred property to the estate by the defendants Adams. It is alleged that the challenged transfer of real property violated §§ 548(a) and 727(a)(2)(A) of the Bankruptcy Code. On the issues joined by the pleadings, a plenary evidentiary hearing was held in Joplin, Missouri, on February 26, 1982. The evidence then adduced warrants the following findings of fact.

### Findings of Fact

On April 26, 1977, the debtors Mark Wayne Keenen and Donna Lee Keenen, together with her parents Russell E. Adams and Velma L. Adams, entered into a contract for deed with one Clarence Powell and his wife. The contract for deed was in respect to the following described property:

"All of the E½ of the NW¼ Section 25 and NE¼ Section 25, exc. a tract desc. as beginning at a point 1626′ S of NE corner of Said Sec. 25, thence South 391′; West 316′; North 391′; East 316′ to pob; all in Twp. 29 North, Range 31 West of 5th P. M. subject to all public & private roads and easements."

The land thus contracted for consisted of 238 acres. Under the terms of the contract for deed, the Keenens and the Adams were to pay a total price of $214,700.00 for purchase of the land; $57,969.00 down and $2,000 per year plus interest on the declining balance. The title, when conveyed by the Powells after payment of the full purchase price, was to be conveyed so that the Keenens had a half interest and the Adamses a half interest.[1] The contract for deed was not recorded. Even so, under the governing law of Missouri, the making of the contract had the effect, between the parties, of creating an interest in the debtors in half of any equity to which payments entitled the prospective conveyees.[2]

Pursuant to this contract for deed, the defendant Russell E. Adams made the down payments in the sum of $57,893.00. The defendants deny that the Keenens made any contribution to the down payment, and there is no evidence to contradict their deni-

---

[1] The clear provisions of the contract for deed of April 26, 1977, are to the effect that "Clarence A. Powell and Dorothy Powell, husband and wife, party of the first part, hereinafter called the seller . . . and Russell E. Adams and Velma L. Adams, h & w ½ interest and Mark W. Keenen and Donna Keenen, h & w ½ interest, parties of the second part, hereinafter called buyer, . . . (agree that) the seller hereby sells and agrees to convey to said buyer the following described land, situated in the County of Jasper, State of Missouri, to-wit: All of the E½ of the NW¼, section 25 and NE¼ of section 25, exc. a tract desc. as beginning at a point 1626′ S of NE corner of said Sec. 25, thence South 391′; West 316′; North 391′; East 316′ to pob; all in Twp. 29 North, Range 31 West of 5th P.M. subject to all public and private roads and easements." The contract for deed bears the signatures of "Clarence and Dorothy Powell," "Russell E. Adams and Velma L. Adams," and "Mark W. Keenen and Donna L. Keenen."

[2] "An installment land sale contract or so-called contract for deed evidences a sale of the land and an obligation of the seller to convey and of the purchaser to pay the purchase price in installments, usually over a long period of time, and is essentially a security instrument taking the place of a purchase money mortgage." H & L Land Co. v. Warner, 258 So.2d 293, 295 (Fla.App.1972). See also Fincher v. Miles Homes of Mo., Inc., 549 S.W.2d 848, 857 (Mo. en banc 1977).

als in this regard. According to the testimony of the defendants, they then made an oral agreement, to which they are the only witnesses and parties and which has never in any respect been reduced to writing. The terms of this oral agreement have been testified to by the defendants only variously and with self-contradiction. In the trial of this action, they testified that it was the essence of this oral agreement that the defendants Keenen were henceforth to have full and exclusive use and enjoyment of the property; and that the Keenens accordingly, were, *after a period of ten years*, to commence repayment of the $57,893.00 down payment to the Adamses, with interest.[3] Their testimony to this effect contrasted with former testimony to the effect that the Adamses donated the land to the Keenens as an advancement on the inheritance of their daughter, Donna Keenen.[4] Now, however, in the hearing of the action at bar, the defendants Adams denied that any sign, indicia or trapping of title or interest was, in the meantime, to devolve upon the Keenens until after the death of Russell E. Adams.[5] During the time of the Keenens' exclusive occupancy of the land, however, the Adamses rented pasture land from them, the rental for which was ultimately offset against interest charges.[6] The inclusion of the Keenens on the contract for deed as parties contracting for a half interest, it was now maintained, was a clear oversight and clerical error which they had overlooked for some four years.[7] This is so, they state, even though, for the years 1978, 1979, and 1980, Mark Wayne Keenen made the annual payments of principal and interest due on the contract for deed—a sum totalling approximately $50,000.[8]

On April 14, 1981, a sale of 158 of the 238 acres was made to another person. In order to consummate the sale, the Powells executed a deed to all 238 acres to the Adamses and the Keenens, in accordance with the terms of the contract for deed.[9] The Keenens and Adamses then conveyed

---

3. This provision appears definitely to violate the statute of frauds. There was no provision for any acceleration of the time for the commencement of payments, and it therefore appears that this is an "express and specific agreement not to be performed within (one year)." 72 Am.Jur.2d *Statute of Frauds* sec. 9, p. 573 (1974). Thus, under the definite terms of the oral contract, specifying no payment until 10 years had elapsed and making no provision for payment any sooner, there was no possibility of performance within a year to take the agreement out of the statute of frauds. Section 432.010 RSMo. "The object of the statute is to prevent fraud and perjury in setting up verbal agreements not to be performed within a year." 72 Am.Jur.2d *Statute of Frauds*, sec. 7, p. 571 (1974). And, as in this case, the "courts will not permit the statute of frauds to be used as an instrument to encourage or promote that which it was enacted to prevent." *Gipson v. Fisher Bros. Co.*, 204 S.W.2d 101, 107 (Mo.App.1947). See also note 26, *infra*.

4. In the hearing of this action, the defendants did not deny their testimony to this effect in the prior hearing held in a dischargeability action in this court.

5. It was the testimony of the Adamses in the hearing of this action that, even though the Keenens were to have exclusive use and enjoyment of the land, the Adamses were to have formal legal title to it. But see note 2, *supra*.

6. It was the uncontradicted testimony of the defendant Russell E. Adams that all the interest payments owed by Mark Wayne Keenen and Donna L. Keenen to the Adamses were fully extinguished by the pasture rights and certain other work which Mark Wayne Keenen performed for the Adamses.

7. Nevertheless, all the parties signatory to the contract purported to sign simultaneously and to know of each others' signatures. See note 1, *supra*.

8. The payments which Mark Wayne Keenen testified clearly and without contradiction that he made were as follows:

1978 — $15,000 ($2,000 principal and $13,000 interest)
1979 — $18,000 ($2,000 principal and $16,000 interest)
1980 — $19,000 ($2,000 principal and $17,000 interest)
total     $52,000

9. It is undisputed that the deed which was executed by the Powells was to the Adamses and the Keenens in the same portions as in the contract for deed. See note 1, *supra*. Mr. Adams, in his testimony, states that the deed was so made only to follow the language of the contract for deed and that it was not intended in any way to contradict the Adamses' claim to sole title of the property.

158 of the acres to the new purchasers.[10] And the Keenens conveyed the remaining 80 acres to the Adamses.[11] The consideration for the transfer of this 80 acres was repayment for the $57,893.00 down payment originally made by Russell E. Adams plus some $9,600.00 plus $8,788.48 in additional interest charges paid by him [12]—a total of $76,800.00. According to the defendants' evidence, the 80 acres, at the time of this transfer, had a value of $72,000.00.[13] It is admitted that the Keenens were insolvent at the time of the transfer.[14] The transfer came after the Keenens had had several demand letters from a creditor, Agmo Corporation, and after they were in default on some of their debts,[15] but it came before the first letter actually threatening sent—that of the plaintiff Carthage Farmers Exchange dated May 7, 1981. The defendants contend that the decision was made in January 1981 that the 80 acres should be transferred by the Keenens to the Adamses, but the reason for the decision at this time is not made clear by their testimony. The sole reason for the delay until April 14, 1981, according to the defendants' testimony, Mark Wayne Keenens "slowness" in getting things done. The defendants Keenen also deny that the transfer took place after they had formed an intention to file for relief under title 11 of the United States Code. They state that they did not conceive such an intention until after they had received the abovementioned letter of the Carthage Farmers Exchange dated May 7, 1981. The Adamses deny any knowledge of the Keenens' insolvency at the time of the transfer of April 14, 1981.

## Conclusions of Law

■ Based on the foregoing findings of fact, the conclusion is compelled that the transfer of the 80 acres to the parents of Donna Keenen on June 14, 1981, was a transfer for inadequate consideration while the debtors were insolvent. Therefore, it is avoidable by the plaintiff trustee in bankruptcy under § 548(a)(2) of the Bankruptcy Code.[16] With respect to the element of insolvency, there is no question; the defendants testimonially admitted insolvency in the hearing of February 26, 1982. It is not contended that there was any contemporaneous consideration for the transfer. But even an antecedent debt is sufficient consideration under the fraudulent conveyance statute upon which to base a denial of the trustee's suit.[17] And the debtors con-

---

**10.** The deed then rendered was from both the Adamses and Keenens to the third party. Then, as to the 80 acres here in issue, the Keenens executed a warranty deed to the Adamses.

**11.** This was accomplished on April 14, 1981, well within one year prior to the date of bankruptcy, July 29, 1981.

**12.** The testimony of Russell E. Adams is clear to the effect that the sum of $8,788.48 was an amount which he had to pay to the Powells on the original contract for deed because it was the amount left unpaid by the proceeds of the sale of the 158 acres. The $9,600 was unpaid interest still owed to the Powells.

**13.** This finding is based upon the uncontradicted opinion evidence rendered by the defendant Russell E. Adams.

**14.** This finding is based on the formal judicial testimonial admission of Mark Wayne Keenen.

**15.** Including, according to their testimony, the indebtednesses to the banks who were their principal creditors. The debtors, however, con-

tend that they were not "in trouble" with those banks.

**16.** "The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor ... received less than a reasonably equivalent value in exchange for such transfer or obligation; and was insolvent on the date that such transfer was made ..." Section 548(a)(2) of the Bankruptcy Code.

**17.** See section 548(d)(2) of the Bankruptcy Code to the effect that "value" includes the "satisfaction ... of a present or *antecedent* debt." (Emphasis added.)

As noted above, Mr. Adams testified that, by permitting him to use a portion of the property and by doing other "work" for him, the Keenens had satisfied any and all indebtedness to him for interest on the amount of the down payment. At the lowest imaginable rate, this interest over the four-year period dating from the execution of the contract for deed on April 14, 1977, to the sale of the 158 acres on April

tend that the transfer of their half of the 80 acres to the Adamses on June 14, 1981, was in consideration of Russell E. Adams' paying some $76,000 under the initial contract for deed to purchase the 238 acres from the Clarence Powells. They contend, therefore, that Russell E. Adams paid all that was paid to the Powells and others for ownership of the 80 acres. But this is not true when, as noted above, the evidence is uncontradicted to the effect that the Keenens paid some $52,000 in principal and interest in making the annual payments to Powell. When payments made by Russell E. Adams are properly adjusted to subtract the interest payments made by him but which he testimonially admitted were earned by Mark Wayne Keenen's work for him,[18] the value of the contributions of the Keenens vastly exceed that of the Adamses.[19] Thus, even if the respective interests of the Keenens and Adamses are to be gauged, as they apparently now contend, by their respective contributions to the purchase price of the property, the Keenens were entitled to at least half of the 80 acres, and their transfer of it was accordingly without consideration. This is especially so when the unequivocal language of the governing contract for deed purported to grant the Keenens a ½ interest in the entire 238 acres, including the 80 acres involved in the action at bar. The defendants cannot now, by the artifice of allocating nearly all of the Keenens' contribution to interest and practically all of

the Adamses' contribution to principal, now deprive the bankruptcy estate of the debtors' fairly claimable portion of the property.[20] The bankruptcy court, as a court of equity, must "look ... through form to substance [and] treat the transaction according to its real nature." *Katz v. First Nat. Bank of Glen Head*, 568 F.2d 964, 970 (2d Cir. 1978).

The defendants, however, contend that, either prior to, contemporaneous with or subsequent to the execution of the contract for deed with Clarence Powell, the Keenens and the Adamses made an oral agreement under the terms of which the Keenens were to have exclusive use and enjoyment of the 238 acres contracted to be purchased in return for which the Keenens were to repay the Adamses the $57,893 down payment made by the Adamses, plus interest, the payments to commence within ten years, and were meantime to make the annual payments of principal and interest to Clarence Powell. But legal title to all the equity to which the Keenens and Adamses were entitled under the contract for deed [21] was meantime to remain in the Adamses until after the death of Russell E. Adams, at which time it was to pass to the Keenens. There is no credible evidence to support the existence of this agreement. As noted above in the findings of fact, the defendants' current testimony as to its existence is sharply contradicted by their own

14, 1981, (at the lowest statutory rate of 6% per annum) the value of these services would have been about $3470 per year or $13,880 for the four-year period. When combined with the total principal and interest payments which the Keenens made directly to the Powells, see note 8, *supra*, the total contribution of the Keenens to the property would have to be valued at approximately $66,000. And the contribution of the Adamses, accordingly, reduced by the same $13,880 (which the testimony shows to have been a sum owed to the Keenens by the Adamses for the pasturage and "work"), can be reckoned as an inferior amount of approximately $62,000. In reaching these totals for the comparative contributions of the parties, the court has only been guided by their own testimony as to what they actually contributed. They cannot now, by superimposing additional obligations in favor of the Adamses and upon the Keenens by means of an oral agreement

which violated the statute of frauds, see note 3, *supra*, and note 26, *infra*, and the rule against secret oral agreements, *Miner v. Bennett*, 556 S.W.2d 692, 695 (Mo.App.1977), greatly reduce the Keenens' contribution and increase that of the Adamses by the same amount. The court cannot be mindful of or give effect to such a subterfuge. For, the bankruptcy court, as a court of equity, must "look ... through form to substance (and) treat the transaction according to its real nature." *Katz v. First Nat. Bank of Glen Head*, 568 F.2d 964, 970 (2d Cir. 1978).

18. See note 17, *supra*.

19. See note 18, *supra*.

20. See note 18, *supra*.

21. See note 1, *supra*.

prior testimony to the effect that the Adamses intended to make an outright gift of the property to the Keenens, or an advancement on the inheritance of Donna Keenen.[22] Even if credible, however, if the oral agreement preceded or was simultaneous with the contract for deed, evidence of it is inadmissible under the Parol Evidence Rule to vary the written provisions of the contract for deed whereby the Keenens and Adamses agreed to take a half interest each in the land.[23] If entered into after the contract for deed, it is a secret, oral, unrecorded[24] agreement purporting to nullify a written conveyance of real property. As such, as will be further developed below, it is almost universally regarded as a badge of fraud and one which the Missouri courts regard as sufficient to taint the entire transaction as fraudulent.[25] Further, the agreement violates the Statute of Frauds.[26]

■ But even if this oral agreement must be now heeded according to its terms, despite each and every one of the foregoing considerations, the trustee must still prevail. For, by the terms of this oral agreement, the Keenens are granted full and exclusive use and enjoyment of the property during the lifetime of Russell E. Adams and full formal title to it at his death,

subject only to the payment of certain value to the Adamses which, with respect to the 80 acres, according to the uncontradicted evidence, has already been made.[27] The trustee, as the successor under § 541 of the Bankruptcy Code, of all the debtors' legal and equitable interest succeeded to the debtors' rights under this agreement. And he may therefore avoid the transfer of them on June 13, 1981, without consideration while the debtors were insolvent.

For the foregoing reasons, it is concluded that the transfer is voidable under § 548(a)(2) of the Bankruptcy Code as a transfer of the debtors' property within a year of bankruptcy while insolvent and without reasonably equivalent consideration.

## II

■ But, under the facts found above, the conclusion is compelled that the transfer is also avoidable under § 548(a)(1) of the Bankruptcy Code as one made "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer occurred." The defendants deny the existence of such actual intent, but it may

**22.** See note 4, *supra.*

**23.** Parol evidence "is not admissible to contradict, add to, or vary a writing ..." *Smith v. Githens*, 271 S.W.2d 374, 379 (Mo.App.1954).

**24.** Much has been made by the defendants of the fact that the contract for deed was as well unrecorded. But it still had the effect, *inter partes*, of conferring rights upon the Keenens to a one-half interest in any equity in the property under the legal principles stated in note 1, *supra.* And the trustee in bankruptcy succeeded to those rights *inter partes* under the provisions of section 541 of the Bankruptcy Code.

**25.** See *Miner v. Bennett*, 556 S.W.2d 692, 695 (Mo.App.1977), to the following effect: "This court has set aside as fraudulent and void as to creditors absolute conveyances ... which in any manner concealed a secret trust ... As a general rule, a conveyance, which on its face contains no reservations, will be held either presumptively or conclusively fraudulent as to creditors where it is accompanied by a secret agreement between the parties, which reserves an interest, benefit, or advantage to the grant-

or, his family, or others inconsistent with the terms of the conveyance." Thus, the Adamses, in providing by the secret oral agreement to retain an undisclosed interest in the ½ interest in equity which they agreed in writing in the contract for deed of April 26, 1977, to confer on the Keenens, violated this cardinal rule. And this fraud also taints the transfer of April 14, 1981, which was made in accordance with the secret agreement.

**26.** See note 3, *supra.* See note 17, *supra.* Further, the statute of frauds which requires that conveyances or agreements concerning realty be in writing also requires that they can be amended only in writing. Thus, "any contract for the sale of lands," within the meaning of section 432.010 RSMo, cannot be modified orally. "(W)here the original contract is required by the statute of frauds to be in writing ... it may not be modified or varied by a subsequent oral agreement." *Gee v. Nieberg*, 501 S.W.2d 542, 544 (Mo.App.1973).

**27.** See note 18, *supra.*

nevertheless be proven by circumstantial evidence,[28] such as the confluence of the badges of fraud which exist in this case.[29] To summarize these badges of fraud, there was a transfer of the property to relatives by the debtors, while insolvent, without consideration, and all subject to a secret oral agreement altering the conditions of transfer, after numerous collection demands by creditors.[30] Further, in their testimony in this court, the defendants have shifted their contentions respecting the effect and conditions of the transfer according to what was perceived at the moment to be in their best interest.[31] "When it is shown, as in the case at bar, that the transfer within the year preceding bankruptcy has been to a relative for inadequate consideration during the pendency of a lawsuit against the transferor, and in the absence of an explanation by the transferor sufficient to dispel these badges of fraud, the court cannot escape the conclusion that the transfer was with intent to hinder, delay and defraud creditors ..." *Burtrum v. Laughlin*, 7 B.R. 924, 926 (Bkrtcy.W.D.Mo.1981). Under these standards, actual intent to hinder, delay and defraud the creditors in existence must be regarded as having been clearly demonstrated. Therefore, for the separate and independent reason that § 548(a)(1) of the Bankruptcy Code commands it, the transfer of the 80 acres must be avoided by the trustee.

## III

For the same reasons, the discharge in bankruptcy of the debtors Keenen should be denied. Section 727(a)(2)(A) of the Bankruptcy Code provides that "[t]he court shall grant the debtor a discharge unless ... the debtor, with intent to hinder, delay, or defraud a creditor ... has transferred ... property of the debtor, within one year before the date of the filing of the petition." As noted above, the requisite fraudulent intent has been clearly and amply proven. Under the particular circumstances of this case, therefore, the court should, under the governing standards, enter the decree denying the discharge in bankruptcy.[32]

## IV

With respect to the recovery of the property or its value, the trustee, under § 550 of the Bankruptcy Code, is authorized to recover it from "the initial transferee of such transfer or the entity for whose benefit such transfer was made," subject only to the claim of a good faith transferee to the extent he gives value.[33] Under these rules, the plaintiff trustee in the case at bar may recover 40 of the 80 acres from the Adamses, to be selected by the trustee, or, at his option, their equivalent in value. For, when the Adamses participated in making the secret oral agreement and the transfer was wholly without consideration, there has been no good faith on their part.[34]

**28.** "The requisite intent may be inferred and will be presumed if the transaction is marked by several 'badges' of fraud." *In re Harry Kaiser Associates, Inc.*, 14 B.R. 107, 109 (Bkrtcy.S.D.Fla.1981).

**29.** See note 28, *supra*.

**30.** The transfer after collection demands, even though those demands may not have explicitly threatened suit, may reasonably be considered as part of the evidence tending to prove an intent to hinder, delay and defraud creditors.

**31.** Cf. note 4, supra.

**32.** "Because the Referee is in a superior position to make the proper determination of any issue of fact, it has been held that he has broad discretion in granting or refusing discharge." *In re Brown*, 314 F.Supp. 947, 954, 955 (W.D. Ark.1970), affirmed, 444 F.2d 49 (8th Cir. 1971). The rule is particularly applicable in a case such as that at bar, in which the issue of credibility of the parties is involved.

**33.** "(L)iability is not imposed on a transferee *to the extent* that a transferee is protected under a provision such as section 548(c) which grants a good faith transferee for value of a transfer that is avoided only as a fraudulent transfer, a lien on the property transferred to the extent of value given." Legislative History to section 550 of the Bankruptcy Code. (Emphasis added.)

**34.** The evidence in this action clearly shows that all the defendants clearly joined in the secret oral agreement which would, without regard to any principles of law or equity, enhance the Adamses claims at the expense of the estate.

And, even if there were, they are protected by § 550 only to the extent which they have given value, and they have given none.[35]

It is therefore, accordingly,

ORDERED, ADJUDGED AND DECREED that the discharge in bankruptcy of the defendants Keenen be, and it is hereby, denied. It is further

ORDERED, ADJUDGED AND DECREED that the transfer of 40 of 80 acres of land on June 13, 1981, from the debtors to the defendants Russell E. Adams and Velma Adams be, and it is hereby, avoided and set aside and the defendants Adams directed to restore the property or its value, at the trustee's option, to the bankruptcy estate.