In re Joseph NEWMAN, Debtor.

Ira S. GREENE, as Trustee of Joseph Newman, Debtor, Plaintiff-Appellee,

v.

Joseph NEWMAN, Andrew Charla, J.E.S. Equities, Inc., Susan Newman, Allan Newman, and Nelstad Trucking & Contracting Corp., Defendants-Appellants.

No. 81 Civ. 4390 (RLC).

United States District Court, S. D. New York.

Nov. 16, 1981.

Ira S. Green, New York City, for plaintiff-appellee.

Solomon Abrahams, P. C., Hartsdale, N. Y., for defendants-appellants.

## OPINION

ROBERT L. CARTER, District Judge.

Defendant, J.E.S. Equities, Inc. ("J.E. S."), appeals from a ruling of the United States Bankruptcy Court, 11 B.R. 628 (Bkrtcy.S.D.N.Y.1981) (Schwartzberg, J.) granting partial summary judgment in favor of Ira S. Greene, the trustee in bankruptcy for the debtor, Joseph Newman. Greene was found entitled to recovery as a matter of law on three, the second, seventh and twelfth, of his thirteen causes of action and to the dismissal of all four of defendants' counterclaims. A thorough review of the record satisfies the court that the bankruptcy court was correct in each aspect of its decision.

The three affirmative counts on which judgment was rendered all concerned the November 15, 1979 transfer of $40,000 from the debtor to J.E.S. in exchange for a note in the same amount with a pay-out period, commencing on November 15, 1982, of 36 years and 11 months and bearing interest at 7 percent per annum. The facts and circumstances underlying this arrangement are uncontested. J.E.S. was incorporated by the debtor's children on September 28, 1979, seventeen days after a jury verdict was returned against him in the sum of $86,704. On the date of the transfer, the bankrupt was insolvent within the meaning of the Bankruptcy Act ("Act"), 11 U.S.C. § 101(26)(a) and N.Y. Debtor and Creditor Law § 271. The exchange took place within one year of the filing of the involuntary petition in bankruptcy which occurred on November 24, 1979.

The trustee's second cause of action alleges that the arrangement between Newman and J.E.S. violated § 548 of the Act. In its seventh count, the complaint claims that the conveyance was made without fair consideration in violation of N.Y. Debtor and Creditor Law § 273. And, the thirteenth cause of action invokes § 273–a of the New York statute. All three claims seek the same relief, an order voiding the transaction and remitting the $40,000 to the trustee.

Defendant's appeal focuses on specific elements of the relevant statutes, arguing that triable issues exist with respect to the "reasonably equivalent value" provision of the Act § 548(a)(2)(A) and the "fair consideration" requirement of N.Y. Debtor and Creditor Law §§ 273, 273–a. J.E.S., in cursory fashion, also contends that trial is necessary to determine whether its principals knew that the debtor was insolvent at the time of the conveyance. But, it gives no indication, and none is evident, of how this issue is relevant to the applicability of § 548(a)(2)(A). J.E.S.'s position thus rests entirely on the comparative values of its promissory note and Newman's cash.

The trustee submitted the affidavit of Robert C. Collett, a financial expert with long experience in computing present value tables. Based on J.E.S.'s organizational youth, its limited assets and the length of time before the loan was to be paid off, Collett employed a 17 percent interest rate to estimate the note's present value at $12,419.23. In a subsequent addendum to this statement, Collett noted that he had considered J.E.S.'s $24,000 in assets other than those obtained with the note and stated that the present value of the note would be $17,465.11 if figured at the prime rate (which, he claimed, J.E.S. would not qualify for).

Relying on Collett's information and its own common-sense view that "a $40,000 note from J.E.S. (controlled by the debtor's children), payable to the debtor over a period of nearly 37 years at 7% interest is not the reasonable equivalent of $40,000 in cash today," the court held that the trustee was entitled to recover the fraudulent conveyance pursuant to § 548(a)(2) of the Act and applicable New York law. The papers filed by J.E.S. in opposition to Greene's original motion purport to show that the valuation issue is not ripe for summary judgment because to state a value for any note of an unlisted company is necessarily "mere speculation" and because Mr. Collett's estimate was a "sham." Abrahams affidavit at 2, 3. But, it is Abrahams, not Collett, who offers speculative information by rebutting the financial expert's detailed analysis with his conclusory assertion that such evaluations are inherently uncertain. And, Abrahams is arguing in his role as defendants' counsel while making no claim that he is independently qualified to express expert opinions on financial matters. Thus the note's value was not a question of fact requiring trial on the merits.

Similarly, Mr. Collett's affidavit was not a sham. This accusation was based on the mistaken premise that Collett had neglected to account for J.E.S. assets of $24,000 in arriving at his present value figures. The second Collett affidavit establishes that the stated sum was considered.

It is also significant that plaintiff's papers alone provide factual data on the value of the J.E.S. note. J.E.S. submitted an affidavit of its own financial expert, but it addressed only the debtor's dealings with New Rochelle Manufacturing Company, Inc. Due to the legitimate dispute over the value of these notes, the trustee's demand to recover their amounts was not disposed of by summary judgment. J.E.S.'s failure to provide equivalent information with respect to its note left uncontested the evidence that no "fair consideration" or "reasonably equivalent value" was given in the exchange.

Summary judgment was also correctly granted in dismissing J.E.S.'s four counterclaims against the trustee. All four of these claims are grounded in allegations that the trustee acted tortiously in instituting and pursuing the present action. Defendants' contend that the trustee knowingly asserted frivolous claims to harass them and to give Newman's creditor, Chrysler Credit Corp., an unjustified gain. The bankruptcy court properly paid little heed to these counterclaims, noting that the trustee is an officer of the court empowered with the protection of the estate for the benefit of the creditors through actions to set aside fraudulent conveyances. That his pursuance of the instant lawsuit was proper was evidenced by his entitlement to summary judgment with respect to three causes of action. It is quite telling that in all of their papers opposing summary judgment defendants' give no support for their position on these counterclaims.

For the foregoing reasons, the decision of the bankruptcy court granting partial summary judgment to the trustee is affirmed in all respects.

IT IS SO ORDERED.