In re ROCO CORPORATION d/b/a Standard Supply Company, Debtor.

Edward CONSOVE, Plaintiff,

v.

Avram COHEN, Trustee, Defendant.

Bankruptcy No. 8000718.
Adv. No. 800239.

United States Bankruptcy Court,
D. Rhode Island.

Dec. 10, 1981.

**814**

John F. Bomster, Russell D. Pollock, Adler, Pollock & Sheehan Inc., Providence, R. I., for plaintiff.

Edward J. Regan, Robert J. McGarry, Tillinghast, Collins & Graham, Providence, R. I., for Trustee.

## DECISION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on the Plaintiff's complaint to modify the automatic stay, 11 U.S.C. § 362 (1979), and on the Trustee's counterclaim seeking to avoid certain transfers of the Debtor's property to the Plaintiff.

On September 23, 1980, an involuntary petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 701, et seq. (1979), was filed against the Debtor, Roco Corporation, d/b/a Standard Supply Company, and an order for relief was entered on September 26, 1980.

Since 1932, Roco had been engaged in the business of selling hardware and related supplies. The Plaintiff, Edward Consove, is a former shareholder, officer, and one of the founders of Roco. From the inception of the business through February, 1978, Edward Consove and Arthur Rosen each owned fifty percent (50%) of the shares of Roco. According to Louis Adler, Roco's own accountant during most of that time, Roco was a "marginal" business, but one which generally paid its bills as they became due.

Prior to 1970, the Plaintiff's son, Gerald Consove, was a part-time employee of the company, and thereafter he worked full time. The record indicates that Gerald Consove was never held in very high regard by Arthur Rosen, and that he was not considered for any position of responsibility until after Rosen's death. When Rosen died in February, 1978, the corporation purchased his interest for approximately $130,000, and at the conclusion of those negotiations with Rosen's estate, Edward Consove and his son began talking about Gerald buying Roco. These father/son discussions culminated in a number of transactions which were executed on November 1, 1979. On that date, Edward sold his 100 shares, which represented all the issued and outstanding capital stock of Roco, to the corporation. The consideration was a promissory note in the amount of $300,000. This note provided for interest at the rate of ten percent (10%) per annum, payable in monthly installments, or, at Roco's option, weekly installment payments of $600, with a year-end adjustment. Only interest, in the amount of $30,000 per year was payable for the first five years, and thereafter the monthly installments were to be increased to provide for amortization of the principal within fifteen years. Edward received a second note at the same time for $29,558.13,[1] which represented an old loan that he had made to the company. As collateral for both notes, Edward Consove took a security interest in the following items:

Receivables, Inventory and Equipment; All ledger sheets, files, records, documents and instruments . . . evidencing an interest in or relating to the Collateral; and All Instruments, documents, securities, cash, property and the proceeds of any of the foregoing, owned by Borrower or in which Borrower has an interest,

. . . .

---

1. Edward testified that the amount of the note was in error, and that the correct principal amount due is $26,000.

Security Agreement, Plaintiff's Exhibit 3. A financing statement was properly filed with the Rhode Island Secretary of State on October 30, 1979. Edward's loans to the business had been unsecured prior to November 1, 1979.

On the same date as Edward's transfer of all of the outstanding shares of stock of Roco back to the corporation, Gerald purchased one share of the common stock of Roco for $3,000 and, thereupon, became the sole stockholder of the company. Gerald also became the sole officer and director, with Edward Consove resigning as director and President effective November 1, 1979. Also on November 1, 1979, Edward Consove and his wife Irene (Gerald's mother), directed a letter to Gerald requesting that Gerald allow Roco to redeem the stock owned by Edward. This letter

> ... put in writing the agreement of the Consoves, which agreement is the consideration for your allowing the Company to enter into the transaction and your willingness to acquire a stock interest in the Company and to operate it, that the promissory note and any balance due thereunder shall be given to you at the time of the death of the survivor of the Consoves, unless, of course, the promissory note has been paid in full by that time.

Defendant's Exhibit G.

Through these transactions, the Consoves expected to receive a steady stream of income during their retirement and then to make a testamentary gift of the unpaid balance of the note to Gerald. After these matters were concluded, Edward and his wife moved to Florida. It was not long before problems began to appear.

In January, 1980, Gerald telephoned his father, told him the receivables were slow coming in, and asked for $15,000. Edward Consove testified that it was not unusual when he was running the company to advance funds to assist cash flow when business was slow. In response to Gerald's request, Edward and Irene Consove sent checks for $5,000 and $10,000, respectively, both payable to Gerald S. Consove and Standard Supply. A check in the amount of $15,000 was drawn by Roco's bookkeeper and sent to Edward Consove, with the understanding that Edward would hold it until he was notified that Roco had sufficient funds in its account to cover the check. On May 22, 1980 Roco issued a new check to Edward Consove to replace the first check which had grown "stale." Defendant's Exhibit W. Edward cashed this check on June 13, 1980 in full payment of the January loan.

Between November 9, 1979 and July 11, 1980, Roco paid Edward Consove 36 weekly interest payments of $600, totalling $21,600. In June, 1980, there was a fire and Roco was forced to close its warehouse. When payments to Edward stopped the next month, he returned from Florida to "take over the operation" from his son who he had reason to believe "was mismanaging" the company. After reassuming control of the company, Edward confirmed his suspicion that Gerald had been using corporate funds for his personal use. When he was confronted about this, Gerald executed a personal note in the amount of $27,000 to Edward. This note has not been paid.

From July 24, 1980 until the filing of the bankruptcy petition on September 23, 1980, Edward Consove caused Roco to issue six checks to himself totalling $36,886.69.[2] The six checks were applied to pay off the $26,158.95 debt to Consove for advances he had made to Roco in prior years. The remaining $10,727.74 was applied to reduce the principal balance on the $300,000 note to $289,272.26.

In the present complaint, the Plaintiff asks that the automatic stay be modified to permit him to continue to exercise his rights under the security agreement dated November 1, 1979. The Trustee denies that

---

2. The dates and amounts of the checks are as follows:

| | |
|---|---|
| July 24, 1980 | $ 2,500.00 |
| August 13, 1980 | 6,500.00 |
| August 15, 1980 | 8,500.00 |
| August 18, 1980 | 5,000.00 |
| August 28, 1980 | 8,000.00 |
| September 17, 1980 | 6,386.69 |
| | $36,886.69 |

Roco is indebted to the Plaintiff in the amount the Plaintiff alleges, and asserts as affirmative defenses that (1) the notes executed in favor of the Plaintiff were fraudulent transfers, (2) that the alleged obligations of Roco to the Plaintiff in fact constituted contributions to capital, (3) that the transactions in question took place while Roco was insolvent, with Roco receiving less than reasonably equivalent value, and (4) that the November 1, 1979 notes constituted an illegal contribution from Roco's capital surplus in violation of R.I.Gen.Laws § 7–1.-1–41, and that therefore the security agreement between Edward Consove and the corporation is void. The Trustee also asserts a number of counterclaims in which he seeks to avoid transfers of Roco's property to the Plaintiff, and asks that the Plaintiff be ordered to turn over any such property in his possession. Since the Trustee's affirmative defense of fraudulent transfer and counterclaims seeking avoidance of preferential transfers under § 547 are dispositive of this case, his other defenses need not be considered.

## I  FRAUDULENT TRANSFER

The Trustee argues that the November 1, 1979 security interest acquired by Edward Consove should be declared void pursuant to § 548 of the Bankruptcy Code which provides, in part, that

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

....

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

In this case, the petition was filed within one year of the November 1, 1979 transaction. Based on the record, I conclude that all the requirements of § 548(a)(2)(B)(i) have been satisfied, that the transfer is fraudulent, and is hereby set aside and avoided.

A. Roco received less than a reasonably equivalent value in exchange for obligating itself to pay $300,000.

The events of November 1, 1979 must be viewed as a single transaction. This was the intention of the Consoves and of Roco, through the Consoves. The object of these dealings was to transfer 100 percent of the stock ownership of Roco from Edward Consove to his son, Gerald Consove, and at the same time, to provide a retirement income to Gerald's parents. The net result of the bargain was that Gerald replaced Edward Consove as the sole stockholder of Roco, and that Edward was to receive his retirement income. With a capital investment of only $3,000, Gerald Consove acquired exactly the same ownership of the business that was previously held by Edward Consove. The effect on the company, however, was catastrophic. Roco became obligated to the Consoves for $300,000, payable at ten percent (10%) interest per annum, in exchange for $3,000 plus ninety-nine (99) shares of treasury stock, which were virtually worthless. See generally *Lytle v. Andrews, (In re Pollard Oil Co.)*, 34 F.2d 252 (8th Cir. 1929); *M. V. Moore & Co. v. Gilmore*, 216 F. 99 (4th Cir. 1914). The conclusion is inescapable that Roco received less than a reasonably equivalent value in exchange for the $300,000 note.[3]

B. Roco became insolvent as a result of the November 1, 1979 transactions.

"Insolvent" is defined in the Bankruptcy Code as that "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation...." § 101(26). Roco's balance

---

**3.** This finding is put in better perspective if one views the commercial reasonableness of the transaction as between parties dealing at arm's length, rather than in a setting between father and son.

sheet as of October 31, 1979, the day before the transaction in question, lists assets at $683,503.55 and liabilities of $501,032.98. Defendant's Exh. B. The Plaintiff argues that the additional $300,000 in liabilities resulting from the November 1 transaction are offset by adding $300,000 worth of treasury stock to Roco's assets. This contention is rejected. Jerome Lefkowitz, a certified public accountant, whose expert opinion is accepted by the Court, testified, based on generally accepted accounting principles, that when a corporation reacquires issued and outstanding stock, that stock is treated as a reduction of equity, and not as an asset. This testimony is supported by acknowledged texts in the accounting field. Meigs, Johnson, Keller & Mosich, *Intermediate Accounting* 570–74; Montgomery, *Auditing* 617. According to these authorities, "treasury stock should be considered not an asset of the issuing company, but a reduction of stockholders' equity. An exception to that rule may arise for treasury stock that has been acquired for the specific purpose of resale to employees or others." Montgomery, at 617. Based on the evidence in this case, Roco does not come within this exception. After the November 1, 1979 transaction, Roco's liabilities ($801,-032.98) were greater, by a substantial amount than Roco's alleged assets of $687,-503.55.[4] Since Roco was insolvent on the date of the obligation in question, or became insolvent as a result of such obligation, the November 1 transfer was fraudulent within the meaning of § 548(a)(2)(B)(i), and is hereby avoided.

Additionally, the Court holds the transaction to be fraudulent based on actual intent to hinder, delay, or defraud the creditors of Roco. § 548(a)(1). When the transferee or obligee is in a position to dominate or control the debtor's disposition of its property, courts have held that the transferee's intent to hinder, delay, or defraud creditors may

be imputed to the debtor. 4 Collier on Bankruptcy ¶ 548.02 (15th ed. 1981); *Langan v. First Trust & Deposit Co.*, 293 N.Y. 604, 59 N.E.2d 424 (1944); *In re Cushman Bakery*, 526 F.2d 23 (1st Cir. 1975); *Duberstein v. Werner*, 256 F.Supp. 515 (E.D.N.Y. 1966). It is clear that Edward Consove controlled Roco at least until November 1, 1980, and therefore his intent with respect to the consequences of that transaction is imputed to Roco. In that transaction, Edward agreed that at his demise, the note by which Roco incurred an obligation 100 times greater than the benefit received would be assigned to Gerald. The negotiations leading to this obligation and transfer were not at arm's length, and the result of these dealings was Roco's insolvency. Based on these facts, the court concludes that the execution of the $300,000 note was an effort to hinder, delay or defraud Roco's creditors and was therefore a fraudulent transfer. See *Jackson v. Star Sprinkler Corp.*, 4 BCD 251 (8th Cir. 1977); *All Gain Enterprises, Inc. v. Del Valle*, Bankr.L.Rep. (CCH) ¶ 67479, 1 CBC 2d 695 (Bkrtcy.S.D. Fla.1980). See also, *In re Sweet*, 20 R.I. 557, 40 A. 502 (1898).

Because this transaction is avoidable under § 548 for the reasons stated above, under the provisions of § 550(a)(1) the Trustee may recover the value of property actually transferred, i.e., interest payments received by Edward Consove totalling $21,600 on the note, and $10,727.74 in reduction of principal.

## II  PREFERENCES

A.  The $26,158.95 which Edward received from Roco between July 29, 1980 and September 17, 1980 was a preference within the meaning of § 547(b).

As stated above, Roco's creditors filed an involuntary petition with this Court on September 23, 1980. From July 24 to Septem-

---

4. The Plaintiff, himself, made this estimate of the assets. If a finding were necessary on this point, the Court's conclusion would be much lower. For example, since the February, 1978 purchase of Arthur Rosen's one-half interest for $130,000 was the last arm's length transaction regarding the business, it seems reasonable to conclude that as far back as early 1978 the maximum value of Roco was $260,000, even before Gerald Consove and the economic climate began taking their toll on what was left of the business.

ber 17 of that year, while he was running the business, Edward Consove, caused Roco to issue to himself six checks totalling $36,886.69. These checks totally paid off an old $26,158.95 note held by Consove, for advances he had made to Roco in prior years, and the remaining $10,727.74 was credited to reducing the principal on the $300,000 note. As this latter amount has already been determined to be recoverable by the Trustee, only the former amount will be considered in this part of the decision.

Section 547(b) states:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

None of the subsection (c) exceptions apply in this case.

■ On the facts of this case, the requirements of subsections (b)(1), (2), and (4) have clearly been met. Subsection (3) is

also satisfied because § 547(e)(4) creates a presumption of insolvency during the ninety days preceding the filing of the petition, and evidence sufficient to rebut that presumption has not been offered. In any event, the Court, in Part I–B of this opinion, has already determined that Roco was rendered insolvent by the November 1, 1979 transaction. Obviously, its financial condition was even worse after the fire in June, 1980. By receiving full payment on the $26,158.95 note, Consove clearly received more than he would receive under a Chapter 7 distribution.

B. The Trustee has failed to show that the $15,000 check cashed by Edward Consove on June 13, 1980 was a preference within the meaning of § 547(b).

■ The Trustee argues that Roco's repayment to Edward of the $15,000 January loan was also a preference within the meaning of § 547(b). Unlike the payments discussed in part A above, the $15,000 check from Roco which was cashed June 13, 1980 was not a transfer made on or within 90 days before the filing date of the petition.[5] Therefore, to meet the requirements of § 547(b)(4)(B), the transfer must have been to an insider who had reasonable cause to believe the debtor was insolvent at the time of such transfer.

In May, 1980, Gerald Consove was the sole director and officer of Roco, and therefore his father Edward as "[a] relative of a general partner, director, officer, or person in control of the debtor" was an insider as defined in § 101(25)(B)(vi). The Trustee argues that Edward had reasonable cause to believe the Debtor was insolvent because "the financial statements prepared for the debtor ... indicate that as of November 1, 1979, as a result of the execution by the debtor of its promissory note for $300,000, the debtor at that time was insolvent." Defendant's Memorandum p. 89.

The $15,000 transfer, however, occurred in June, 1980, and there is insufficient evidence to show that at that time Edward

---

5. The petition was filed on September 23, 1980, and therefore the transfer was made "between 90 days and one year before the date of the filing of the petition." § 547(b)(4)(B).

had reasonable cause to believe that Roco was insolvent. In fact, Edward testified that the January loan to Roco was not unusual as he had advanced funds to assist cash flow in previous years. The Trustee has failed to satisfy his burden of proof as to this element of the case.

## III FINDINGS AND CONCLUSIONS

Based upon all the evidence, the Court makes the following findings of fact and conclusions of law:

1. The September 1, 1980 note in the amount of $27,000 from Gerald Consove endorsed to Edward Consove is an obligation due to Roco Corporation. In this regard, the pre-trial conference in adversary proceeding No. 810030, *Cohen, Trustee v. Gerald Consove*, is scheduled for January 25, 1982 at 2:30 p. m.

2. The Consoves' activities on November 1, 1979, when viewed as a single transaction, constituted a transfer in which Roco received less than a reasonably equivalent value for assuming a $300,000 obligation.

3. Roco was insolvent on November 1, 1979, or became insolvent on that date as a result of assuming the $300,000 obligation. The November 1 transaction, therefore, was a fraudulent transfer within the meaning of § 548(a)(2)(B)(i).

4. Alternatively, the events of November 1, 1979 constituted a fraudulent transfer within the meaning of § 548(a)(1) because of Edward Consove's actual intent (imputed to Roco) to hinder, delay or defraud the creditors of Roco.

5. The payments by Roco to Edward Consove between July 24, 1980 and September 17, 1980 were:

    (a) made to Edward Consove, a creditor of Roco;

    (b) in part to satisfy an antecedent debt evidenced by a note in the amount of $26,158.95;

    (c) at a time when Roco was insolvent (see No. 3 above and note that Roco Corporation had a warehouse fire in June, 1980);

    (d) within 90 days prior to the date of the filing of the petition, September 23, 1980; and

    (e) were more than Edward Consove would have received as a creditor in a Chapter 7 proceeding.

These payments, therefore, constitute preferences within the meaning of § 547(b).

6. The Trustee has failed to establish that Roco's transfer of $15,000 to Edward on June 13, 1980 was a preference within the meaning of § 547.

## IV ORDER

Based on the foregoing findings of fact and conclusions of law, it is Ordered:

1. That Edward Consove turn over to the Trustee $21,600 which he received as interest on the November 1, 1979 note and $10,727.74 which he received as a reduction of principal on that note. See p. 9.

2. That Edward Consove turn over and assign to the Trustee the personal note of Gerald Consove in the amount of $27,000. See p. 4.

3. That Edward Consove turn over to the Trustee $26,158.95, which he received from Roco between July 24 and September 17, 1980. § 550(a)(1). See p. 11.

4. The Plaintiff's request to modify the stay pursuant to 11 U.S.C. § 362 is denied.