In re MISSIONARY BAPTIST FOUNDATION OF AMERICA, INC., (parent Corporation) and the following of its wholly-owned subsidiaries: Management Services Consultants Associates, Inc., Associated Memorial Homes of West Texas, Inc., Associated Memorial Homes of Central Texas, Inc., Associated Memorial Homes of Lubbock, Inc., Texas Homemaker Service, Inc., Associated Memorial Homes of the Greenbelt, Inc., and Missionary Baptist Foundation of America Housing, Inc., Debtors.

Robert B. WILSON, Trustee, Plaintiff,

v.

UPREACH MINISTRIES and E. Harold Henderson, Defendants.

Bankruptcy No. 580-00084.
Adv. No. 581-0100.

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

Nov. 9, 1982.

Richard Hubbert, Sims, Kidd, Hubbert & Wilson, Lubbock, Tex., for Robert B. Wilson, Trustee.

James V. Hoeffner, Walters & Associates, Lubbock, Tex., for Upreach Ministries and E. Harold Henderson.

## MEMORANDUM AND ORDER

BILL H. BRISTER, Bankruptcy Judge.

At all times relevant to this memorandum E. Harold Henderson was a member of the Board of Trustees of the nonprofit corporation, Missionary Baptist Foundation of America, Inc. ("MBFA"). For approximately three years immediately preceding the filing of a bankruptcy petition by MBFA, on October 15, 1980, Upreach Ministries, Inc., a nonprofit corporation which E. Harold Henderson had caused to be formed, had been the recipient of a monthly contribution of $1,700.00 from MBFA. Robert B. Wilson, the trustee of the debtor's estate, filed a complaint against Upreach Ministries, Inc. and against E. Harold Henderson, contending that Upreach Ministries, Inc. was the recipient of fraudulent transfers from the debtor which should be avoided under §§ 548(a)(1) and 548(a)(2) of the Bankruptcy Code and that E. Harold Henderson was individually liable for repayment of the transfers to MBFA, because Upreach Ministries was his alter ego. Further, the trustee contends that the transfers should be avoided, because Henderson has violated his duty of loyalty to the debtor in violation of the provisions of §§ 1396–2.26 and 1396–2.27 of the Texas Nonprofit Corporation Act by engaging in self-dealing with the corporation as defined in 26 U.S.C. § 4941(d)(1) by a disqualified person as defined in 26 U.S.C. § 4946. Upreach Ministries contends that it accepted the contributions in good faith without knowledge of any basis for avoidability. E. Harold Henderson adopts the defenses advanced by Upreach Ministries and, in any event, says that Upreach Ministries is not his alter ego and that he has no individual liability for any debt or other obligations of the corporation. The following summary constitutes findings of fact after nonjury trial.

Debtor was incorporated as a nonprofit corporation in 1968. The testimony at trial reflected that from the beginning its corporate purpose was to solicit gifts of properties from donors and to manage those properties to provide income for religious missions of the Baptist church. Soon after its incorporation it obtained title to some real estate rental properties which had been donated to it and which it managed on behalf of the mission work within its corporate purposes. However, changes in Internal

Revenue tax laws mandated that it change the thrust of its operations. From real estate rentals the nonprofit corporation ventured into the health care field. In 1975 it commenced acquiring and operating nursing homes and at the time it filed its petition for order for relief under Chapter 11 it owned or leased and operated at least twenty six nursing homes in Texas, Arizona, and Wisconsin.

The defendant E. Harold Henderson, a Baptist minister, became a member of the board of trustees of MBFA soon after its incorporation. He resigned his ministry in Lubbock in 1972 and moved to Dallas, Texas, where he pastored another church. However, during the entire period from the time when he first became a member of the Board of Trustees of MBFA until the Chapter 11 petition was filed on October 15, 1980, Dr. Henderson remained active as a trustee, attending substantially all of the board meetings, and, with the exception of the decision to file a Chapter 11 petition, he participated in all of the significant decisions of the Board of Trustees of MBFA.

In 1977 Dr. Henderson resigned as pastor of the Dallas church and caused to be incorporated as a nonprofit corporation the entity known under the common name and style of "Upreach Ministries, Inc." That nonprofit corporation has been engaged in conducting leadership conferences in Baptist churches, worldwide, with Henderson serving as its president and principal employee.

As mentioned above, the corporate purpose of MBFA from its start was to earn monies for religious missions of the Baptist church. As the scope of its corporate activities increased, with corresponding increase in income, the list of charities to which contributions would be made by MBFA ex-

panded to include many religious charities. In 1977 the Board of Trustees of MBFA voted to include a monthly contribution of $1,700.00 to the newly created Upreach Ministries, Inc. The record is not clear whether Henderson abstained from voting for the contribution to his corporation. In any event, the monthly contribution of $1,700.00 to Upreach Ministries, Inc. commenced in late 1977 and continued each month through August 1980.

There was a conflict in the testimony at trial as to the total amount of charitable contributions [1] which MBFA made each month. The testimony reflected that the total of those contributions ranged from $3,000.00 to $6,000.00 each month, including the $1,700.00 [2] contribution to Upreach Ministries. What was unchallenged at trial, however, is the fact that those charitable contributions were faithfully and systematically made by MBFA each month even when no payments of other expenses and debts, secured and unsecured, were made.

The payment of $1,700.00 to Upreach Ministries on August 12, 1980, was the last contribution which MBFA made to it. Petition for order for relief under Chapter 11 of Title 11, United States Code, was filed by MBFA on October 15, 1980. The trustee seeks to avoid the total payments of $17,000.00 made by MBFA to Upreach Ministries, Inc. within the twelve month period next preceding the filing of the Chapter 11 petition.

The trustee argues that the evidence establishes that MBFA made fraudulent conveyances to Upreach Ministries within one year before the filing of the petition in bankruptcy as contemplated by §§ 548(a)(1) [3] and 548(a)(2)(A) and (B)(i) of the Bankruptcy Code.

1. Charities with religious connections to which MBFA made monthly contributions included, in addition to Upreach Ministries, Inc., Fellowship of Christian Athletes, Assembly of God Church, two missionaries in Tanzania, and other charities.

2. Those monthly contributions of $1,700.00 from MBFA represented approximately 50% of the total income of Upreach Ministries, Inc. Dr. Henderson, as president and principal em-

ployee of Upreach Ministries, Inc., drew a salary from Upreach Ministries of $450.00 per week until January 1980 when his weekly salary increased to $500.00. Payment of his salary required approximately 80% of all income to Upreach Ministries.

3. § 548. Fraudulent transfers and obligations.

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obli-

Section 548(a)(1) requires an actual fraudulent intent while § 548(a)(2) is concerned with transfers under conditions from which fraud will be implied in law, despite a lack of proof of actual intent to defraud. Although actual intent to hinder, delay, or defraud creditors is essential to sustain findings of fraudulent conveyance under § 548(a)(1), the finding of the requisite intent may be predicated upon the concurrence of facts which, while not direct evidence of actual intent, lead to the irresistible conclusion that the transferor's conduct was motivated by such intent. *4 Collier on Bankruptcy,* § 548.02, pp. 548–33 (15th ed. 1982). While actual fraud may be inferred from the circumstances surrounding a particular transaction or series of transactions, the facts supporting such an inference must preclude any reasonable conclusion other than that the purpose of the transfer was to defraud the transferor's creditors.

In this case the trustee cites a dual basis for recovery under § 548(a)(1). First, he contends that MBFA continued to make the charitable contributions, including the payment to Upreach Ministries, when creditors were not being paid. He claims that the circumstances of those payments establish actual intent to *defraud* creditors. Similarly he argues that the personal secretary of the former chief executive officer of MBFA testified that the debtor continued to make contributions to the charitable organizations when creditors were being paid at least ninety days late and contends that that fact supports his contention that the creditors were being *hindered and delayed.*

Land Wall was the former chief executive officer of MBFA who, from 1976 until a few days after the Chapter 11 petition was filed, was the predominant person connected with MBFA. Wall did not testify at trial, but a transcription of testimony which he had given at one of the § 341 creditors' meetings was read into evidence at the trial without objections. That testimony reflected that MBFA continued to make the charitable contributions, including the payment to Upreach Ministries, Inc., when creditors were not being paid. However, those statements by Wall do not mandate a conclusion that there was actual intent to defraud the creditors of MBFA. The required "actual intent to defraud" creditors is obviously that of the debtor, MBFA. That "intent" can be imputed to the corporation only from the action of its authorized representatives. A business corporation is governed by its directors and its officers who are responsible for the activities of that corporation. Similarly a nonprofit corporation is governed by its trustees. The evidence at trial established that those trustees were altruistic and well-meaning religious persons. However, those qualities do not necessarily equate with good business judgment. The testimony reflects that they heavily relied upon the assertions and projections of Land Wall, the president and guide of MBFA. The testimony at trial reflected that the trustee had complete confidence in Wall. Although the Board of Trustees made the determination as to which charities would be benefited, the actual payments to those charities were made under Wall's direction. It is uncontradicted that those charitable contributions were made before any debts were paid each month. Wall knew and had reason to know the scope of the continuing financial crisis which dogged MBFA. However, he did nothing to bring that crisis to the attention of the Board of Trustees and, in fact, disguised the financial crisis in the financial reports which he faithfully furnished to them. From those financial reports only a most astute financial expert would detect that what appeared to be evidence of a number of profitable ventures in the health care field was actually a harbinger of finan-

gation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

(1) made such transfer or incurred such obligation with *actual intent to hinder, delay, or* defraud any entity to which the debtor was or became, on or after the date that such transfer occurred or such obligation was incurred, indebted;

cial disaster. On those financial reports where deficiencies were noted Wall continuously assured the trustee that monies would soon be forthcoming from the government. Since the operations in the health care field were supposedly "cost reimbursement" operations the trustees believed that they had no reason to doubt the veracity of the reports. The trustees reasonably believed that the net cash flow problems were temporary.

I hasten to add that there is nothing in the record which shows any actual intent on the part of Wall to defraud creditors when he caused the monthly contributions to be made to the charities when the creditors were not being paid. Wall, himself, from all of the available evidence was a highly religious and well-meaning person. It is significant that Wall personally contributed $1,000.00 each month to the account from which the charitable contributions were made.[4]

■ When all of those facts are considered it is apparent that the bankruptcy trustee has failed to meet his burden to show that MBFA, either through its trustees or through actions of Land Wall which could be chargeable to the trustees, possessed actual intent to defraud the creditors of MBFA. After all, the purpose for which the corporation was initially organized was to support religious charities. Wall was making a significant personal contribution towards those charitable contributions. I conclude that the transfers from MBFA to Upreach Ministries cannot be avoided on the trustee's contention that there was actual intent to defraud the creditors by making the transfers.

Moreover, the trustee must fail on his contention that the transfers were made by MBFA with actual intent to hinder or delay creditors. A literal reading of § 548(a)(1) appears to give "actual intent to hinder or delay" equal standing with "actual intent to

defraud." It may be argued, however, that in order to constitute a fraudulent conveyance as contemplated by § 548(a)(1) the "intent to hinder or delay" must also be "fraudulent" intent. In *Irving Trust Company v. Chase National Bank,* 2nd Cir.1933, 65 F.2d 409, the trustee sought to recover a $4,000.00 payment made by the bankrupt to its creditor within ten days of bankruptcy on grounds that the transfer was a fraudulent conveyance. The Court of Appeals disallowed the recovery, stating that the intent to hinder and delay, implicit in any preferential transfer, is not sufficient, without more, to constitute a fraudulent conveyance:

"The Bankruptcy Act recognizes, as did the common law, a distinction between a preferential transfer and a fraudulent conveyance.... § 67e [11 U.S.C. § 107(e) ] deals with the recovery by the trustee of fraudulent conveyances made within four months prior to filing of the petition in bankruptcy. All transfers of his property by the bankrupt within this period, if made "with the intent to hinder, delay or defraud his creditors, or any of them," are declared void, "except as to purchasers in good faith and for a present fair consideration." It is difficult to imagine a preference which does not incidentally hinder or delay creditors, for, whenever an insolvent debtor pays one of his creditors in full, he thereby puts the cash or property so used beyond the reach of execution by the others. Pro tanto every preference hinders and delays them. If the debtor is aware that it will necessarily have that result, the transfer would seem to be made with an intent to hinder, delay, and defraud the other creditors; yet the securing or paying of an actual debt, in good faith, without any design injurious to creditors beyond that implied in giving the preference, was not deemed a fraudulent conveyance under

---

4. The executive secretary testified that each of the three thousand employees of MBFA was afforded opportunity to make voluntary contributions to the "Because I Care" account from which the contributions were made each month. The total contributions from the employees approximated $1,300.00 each month. Thus $1,300.00 of the total contributions which were made each month were not corporate monies, but were made by the employees, individually.

the principals of the common law and the Statute of Elizabeth (cites omitted). Nor is it so under the Bankruptcy Act. This was definitely declared in *Coder v. Arts,* 213 U.S. 223, at page 242, [29 S.Ct. 436, 444, 53 L.Ed. 772] where Mr. Justice Day said: 'We are of the opinion that Congress, in enacting § 67e, and using the terms 'to hinder, delay or defraud creditors,' intended to adopt them in their well-known meaning as being aimed at conveyances intended to defraud...''

■ I conclude, therefore, that the trustee has failed to establish that the challenged transfers were made by MBFA with actual intent to hinder or delay its creditors.

The issue whether the payments to Upreach Ministries constitute an avoidable fraudulent conveyance as contemplated by § 548(a)(2)(A) and (B)(i)[5] is far more difficult to resolve, because those provisions appear to deem certain conveyances to be fraudulent regardless of evidence of fraudulent intent. If two conditions co-exist— "less than reasonably equivalent value" and "insolvency"—there is a conclusive presumption of fraud, any intent to the contrary notwithstanding. A number of bankruptcy opinions have found the existence of fraudulent conveyances absent evidence of fraudulent intent. In most of those cases, however, a clear inference of fraudulent conduct can be made. *See In re Famous State Fair Meat Products, Inc.,* 19 B.R. 48, 50–51 (Bkrtcy.E.D.Pa.1982); *Matter of Keenen,* 19 B.R. 724, 730–31 (Bkrtcy.W.D. Mo.1982); *Butz v. Wheeler,* 17 B.R. 85, 88 (Bkrtcy.S.D.Ohio 1981); *In re Newman,* 15 B.R. 658 (D.C.N.Y.1981); *In re Hester,* 14 B.R. 647 (Bkrtcy.M.D.Tenn.1981); *In re Roco Corporation,* 15 B.R. 813 (Bkrtcy.R.I. 1981); *In re Complete Dry Wall Contracting, Inc.,* 11 B.R. 697 (Bkrtcy.E.D.Pa.1981).

In each of those cases a fraudulent conveyance was deemed to exist regardless of the lack of direct evidence of fraudulent intent. However, in each of those cases the "badges of fraud" were readily apparent. Each involved a one-time transaction (or transfers which occurred over a relatively short period of time) to or through a relative or dominant stockholder of the debtor. E. Harold Henderson probably meets all of the tests to be an "insider" of MBFA. *See* 11 U.S.C. § 101(25)(B)(i). However, there is no evidence whatsoever of wrongdoing on the part of Dr. Henderson. MBFA *was* created to provide contributions to religious charities and Upreach Ministries met the standards imposed by the trustees. Also, while the transfers mentioned in the cases above where one time transactions or transactions which occurred over a relatively short period of time within one year of bankruptcy, the payments to Upreach Ministries had continued over a period of several years, commencing during a period of relative prosperity. The badges of fraud which surrounded the circumstances in the above cited cases did not exist in the period over which the payments to Upreach Ministries were made.

■ Whether the challenged transfer is for "reasonably equivalent value" is largely a question of fact as to which considerable latitude must be allowed to the trier of fact. *Kline v. Tabatchnick,* 2nd Cir.1979, 610 F.2d 1043; *Cohen v. Sutherland,* 2nd Cir.1958, 257 F.2d 737. Section 548(d)(2) defines "value" as "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor."

Under the Code, the good faith of the giver of the consideration is no longer indispensible, as it was under the Act, so long as value passes. (Under § 67d(1) of the Act, "fair consideration," rather than "reason-

---

**5.** § 548. Fraudulent transfers and obligations.

  (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

  (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

  (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

ably equivalent value" was the test required, and good faith was incorporated into the definition of "fair consideration.") Other than dispensing with the good faith requirement, however, it appears that the Code requirement of "reasonably equivalent value" carries the same meaning as "fair consideration" under the Act. *See,* e.g. *In re Famous State Fair Meat Products, Inc.,* 19 B.R. 48 (Bkrtcy.E.D.Pa.1982), where the court defined the two-prong test under § 548(a)(2) as follows: "First, the transfer must be by an insolvent debtor or must render the debtor insolvent. Second, the transfer must be for less than a *fair consideration* (emphasis added)." *Id.* at 50.

The cases decided under § 548(a)(2) of the Code are not very enlightening regarding the requirement of "reasonably equivalent value." That is, the courts, with little if any discussion as to what is meant by the term, merely concluded that reasonably equivalent value exists or does not exist. Also, each case deals with the exchange of tangibles—i.e.—the transfer of real estate with a specified value in satisfaction of an antecedent debt with a specified value. The most recent Circuit Court opinion, discussing the requirement of "fair consideration" under the Act, is *Rubin v. Manufacturers Hanover Trust Co.,* 2nd Cir.1981, 661 F.2d 979:

> "Even if the debtor has transferred property or incurred an obligation within one year of filing of a Bankruptcy petition, the trustee cannot set aside the transaction under § 67(a)(2)(a)(b), if the debtor received 'fair' consideration for his property or obligation. 'Fair' consideration under the Bankruptcy Act ... means more than just "good and valuable" consideration needed to support a simple contract."

*See* also *Cole v. Loma Plastics,* 112 F.Supp. 138, 141 (D.C.N.D.Tex.1953) ("The term 'fair consideration' in its proper sense is no slight standard and actually has a stricter connotation than good or valuable consideration.")

■ I have emphasized throughout that the primary purpose for which MBFA was organized was to make charitable contributions to religious organizations. The contributions made to Upreach Ministries during the twelve month period next preceding the filing of the Chapter 11 petition were those within the scope of the corporate purposes. No one can argue that MBFA received a monetary equivalent for the payments which were made by it to Upreach Ministries during that twelve month period. There was no proof whatsoever that E. Harold Henderson performed any services which arguably could constitute "reasonably equivalent value" to MBFA. Certainly Upreach Ministries furnished nothing tangible to MBFA. However § 548(a)(2)(A) does not appear to require that "reasonably equivalent value" be a monetary equivalent. Land Wall and the Board of Trustees of MBFA reasonably believed that they were complying with the corporate purposes of MBFA in making the contributions to Upreach Ministries. Additionally, they surrounded themselves in the twenty six homes which MBFA operated with like-minded persons with religious interests. The morale of the employees and the good will of all of those people with whom MBFA dealt was reasonably enhanced by the continuation of the charitable contributions. Whether it is called "good will" or whether some other term is applied the compliance with the mandate from the incorporators in making the charitable contributions each month, notwithstanding its insolvency during a portion of the period, establishes that a reasonably equivalent value was received by MBFA in exchange for the challenged transfers. I conclude that the trustee has failed to meet his burden [6] to establish fraudulent conveyance within the meaning of § 548(a)(2).

---

**6.** I have no problem finding that MBFA was insolvent during the twelve months preceding the filing of the Chapter 11 petition. Therefore, the trustee has established the second element of § 548(a)(2)(B)(i) concerning insolvency.

However, before the transfer may be avoided as fraudulent both conditions must be present, viz. "less than reasonably equivalent value" and "insolvency."

980

I have emphasized throughout that I found no evidence of improper conduct on the part of Henderson. The corporation itself was pursuing its corporate purposes in making the charitable contribution. I perceive no basis for the challenge advanced by the trustee based upon claim of director liability under §§ 1396–2.26 and 1396–2.27 of the Texas Nonprofit Corporation Code nor do I find applicability of the self-dealing prohibitions of the Internal Revenue Code, 26 U.S.C. §§ 4941 and 4946.

It is, therefore, ORDERED by the Court that the complaint by the trustee, Robert B. Wilson, against Upreach Ministries, Inc. and E. Harold Henderson be, and it is hereby, denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.

The Clerk is directed to file this order and to furnish a copy of the order to the attorneys of record.