59 B.R. 815 (1986)
In the Matter of Earl and Kathleen MOSES, Debtors.
Richard D. ELLENBERG, as Trustee, Plaintiff,
v.
CHAPEL HILL HARVESTER CHURCH, INC., Defendant.
Bankruptcy No. A82-04008-ADK, Adv. No. 83-1234A.
United States Bankruptcy Court, N.D. Georgia, Atlanta Division.
April 16, 1986.
Richard D. Ellenberg, Atlanta, Ga., for plaintiff.
John C. Pennington, Atlanta, Ga., for defendant.

*816 MEMORANDUM OF OPINION AND ORDER
A.D. KAHN, Bankruptcy Judge.
Plaintiff-Trustee filed the above-styled adversary complaint to recover funds from the Defendant, Chapel Hill Harvester Church, Inc. ("Defendant"). It is stipulated that such funds were transferred to Defendant by the Debtors, Earl and Kathleen Moses, ("Debtors") while they were insolvent. Plaintiff-Trustee alleges that such a conveyance is fraudulent under 11 U.S.C. § 548(a)(2)(A). A trial was held on November 20, 1985 after which the Court took the matter under advisement. The Court finds this matter to constitute a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). After considering testimony of Plaintiff-Trustee, the Debtors, and representatives of the Defendant, this Court makes the following findings of fact and conclusions of law.

I. Findings of Fact
In the year immediately preceding the Debtors' filing of a petition in bankruptcy under Chapter 7 of the Bankruptcy Code and entry of the Order for relief in conjunction therewith, the Debtors transferred to the Defendant church a sum of $4,733.50 by use of 54 checks. Defendant's Answer at ¶ 6. Such transfers given to Defendant by the Debtors were intended to be tithes and offerings. Trial Transcript at 26. In exchange for the transfers, Debtors received a variety of services from the Defendant church. The Defendant church was not a place of worship with a limited function. Trial Transcript at 36. It provided services such as educational facilities, a day care center, counseling services, a program for alcoholics and drug addicts among other services. While Debtors did not use all of Defendant's facilities, they took advantage of many services offered by the church.
For example, Debtors attended worship services at least three times a week. Trial Transcript at 26. These services were conducted in a church building which provided electricity, heating and air conditioning to its worshipers. Trial Transcript at 27. Such amenities were functioning when Debtors attended church. Id. Defendant did not charge a mandatory fee in the form of dues to cover expenses in connection with the operation of the church. Trial Transcript at 32-33. Defendant, instead, relied solely on tithes and offerings. Trial Transcript at 32-33.
Debtors also received extensive marital and other counseling benefits from the Defendant. Trial Transcript at 27. Debtors received between 80 to 100 hours of counseling benefits from the Defendant prior to Debtors' filing for bankruptcy. Trial Transcript at 28. In addition, Debtors sought informal financial counseling from the Defendant regarding their business, Genesis Community Development Corporation. Trial Transcript at 28. Debtors were principal officers of this corporation.
The Defendant further provided resources for Debtors' business by supplying contacts to potential employees and technical information regarding building and construction developments. Trial Transcript at 29-30.
One of the Debtors, Mr. Earl Moses, served as a deacon for the Defendant church and was required to tithe as a holder of such office. The Debtor, Mr. Moses, testified at trial that while the Defendant provided no formal compensation for such services, Defendant helped the Debtor when he was in a "financial pinch." Trial Transcript at 31.

II. Conclusions of Law
Plaintiff-Trustee alleges that the transfers in question were fraudulent conveyances within the meaning of § 548(a) because the "debtor received less than a reasonably equivalent value in exchange for such transfer." § 548(a)(2)(A). Plaintiff-Trustee alleges that since § 548(d)(2)(A) states that "`value' means property . . ." no value was exchanged with the Debtors. Plaintiff-Trustee contends that the purpose of the definition of § 548(d)(2)(A) is to protect creditors by preventing the removal of property from the Debtor without replacing it with property of equivalent value.
*817 Furthermore, the Plaintiff-Trustee contends that, if such transfers were allowed with regard to this particular Defendant, it must be permitted by other religions and secular endeavors as well. To favor particular churches and religions with regard to such claims would violate the First Amendment's establishment clause and the exercise of religion clause of the United States Constitution by involving the court in determining the religious tenants of the alleged beliefs. Plaintiff-Trustee thus concludes that he should recover from Defendant the sums transferred plus interest and costs.
The Defendant church alleges that Plaintiff-Trustee has not carried his burden of showing that the Debtors have not received a reasonably equivalent value for the transfers made. Defendant contends that Plaintiff-Trustee having rested his case without putting up any evidence of conditions which would bring the conveyances within § 548 has failed to carry his burden of proof. Defendant alleges that judgment should therefore be rendered for Defendant.
Moreover, Defendant maintains that, regardless of whether Plaintiff-Trustee met his burden of proof, Debtors received reasonably equivalent value for the tithes and offering transferred to Defendant.
Defendant further alleges that if this Court is to require Plaintiff-Trustee to prove lack of reasonable equivalence, First Amendment problems will arise. First, Defendant contends that the Court's inquiry into the question of reasonable equivalent value with regard to property received for tithing would lead to excessive government entanglement. Such an inquiry would raise questions the Supreme Court sought to avoid in Walz v. Tax Commission, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1969).
In addition, Defendant contends that by forcing the Plaintiff-Trustee to return the transfers in question, the Court may be forced to decide church property disputes, as well as resolve underlying controversies over religious doctrine. Defendant alleges that resolution of the latter controversy has been specifically prohibited by the Supreme Court. Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969). Defendant maintains that a judicial inquiry into the benefits Debtors received for tithing and the process of tithing would constitute excessive government entanglement with religion. The Defendant thus concludes that civil courts are not the forum in which such matters should be resolved. Defendant thus contends that the Court should not avoid the transfers at issue.
This Court does not intend to decide church property disputes nor resolve underlying controversies over religion. The Court will only involve itself with the issue of whether the conveyance now at issue is prohibited by the Bankruptcy Code because reasonably equivalent value was not given in return for property transferred by the Debtors. A threat of excessive government entanglement is therefore not present in the instant case.
The Court must now determine whether transfers to the Defendant church by the Debtors fall under 11 U.S.C. § 548(a) making such transfers a fraudulent conveyances. The pertinent part of this section reads
(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor
. . . .
(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.
In an action by a trustee to set aside a conveyance under § 548, the trustee has the burden of proof to establish that conditions *818 exist which would bring such a conveyance within § 548. 4 Collier on Bankruptcy, section 548.10 (15th ed. 1985). See Rubin v. Manufacturers Hanover Trust, 661 F.2d 979 (2d Cir.1981); Bailey v. Commerce Fed. Savings and Loan Ass'n (In re Butcher), 51 B.R. 61 (Bankr.E.D.Tenn. 1985); Wilson v. Upreach Ministries (In re Missionary Baptist Found. of Am., Inc.), 24 B.R. 973 (Bankr.N.D.Tex.1982). In the instant case, Plaintiff-Trustee has failed to sustain this burden because he has not offered proof that Debtors received less than a reasonably equivalent value in exchange for the transfers at issue.
Reasonably equivalent value has been previously dealt with by this Court in the context of transfers to religious institutions. In Ellenberg v. First Baptist Church of Cochran, Inc. (In re Tanner), Bankruptcy Case No. A85-05692-ADK, Adversary Case No. 83-2003A (Feb. 27, 1985), the Court held that because "it was an implied condition of the Debtor's employment that he made regular tithes and offerings to Defendant," these payments did not constitute fraudulent conveyances within the meaning of 11 U.S.C. § 548. The Court also stated that the transfers in question could be directly tied to the monetary compensation and benefits the Debtor received through his employment by the Defendant church. Similarly, in the case at bar, reasonably equivalent value was given in return for the transfers in question.
Section 548(d)(2)(A) defines value as referred to in subsection (a)(2)(A) as
property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor.
In the instant case, it is clear that the services given by the Defendant church to the Debtors were not for satisfaction or securing of a present or antecedent debt of the Debtors. Therefore, in order for such services to constitute "value" they must be deemed property so as to fulfill § 548(d)(2)(A).
The Bankruptcy Code does not contain a section defining property in any unique way. The term has been defined as "every species of valuable right and interest." Black's Law Dictionary (5th Ed.1979). Black's Law Dictionary further explains,
The word is also commonly used to denote everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal; everything that has exchangeable value. . . .
(5th Ed.1979).
Although nothing tangible was given to the Debtors in exchange for the tithes and offerings, this Court finds that the many services provided to the Debtors by the Defendant constitute "property" pursuant to § 548(d)(2)(A). For example, the counseling services given, which were approximated at trial as being between 80 to 100 hours of counseling, possessed exchangeable value. Such services are offered at great expense by marriage counselors and others. Moreover, the theological education and training of the persons providing such services at the Defendant church enabled them to offer more than merely friendly advice. The Debtors testified at trial that such services assisted them in getting through an extremely difficult period of their lives prior to bankruptcy. Trial Transcript at 27-28.
Furthermore, access to religious services which Debtors attended at least three times a week also possessed exchangeable value. Although pure economic exchange which takes place between religious institutions and those who use their facilities is understandably downplayed so as to preserve the pious nature of such places of worship, such an exchange nevertheless exists. Many religious institutions require their congregation to pay dues to cover expenses of operation. Heating, air conditioning and electrical services, as well as other costs of operation are not provided to churches cost-free. Since the Defendant church did not require that dues be paid, money received from tithes and offerings were the only way to cover the expenses it *819 incurred. The Debtors testified at trial that such utilities were operating during the religious services they attended at the Defendant church.
While this Court does not intend to value the amount of spiritual enrichment Debtors gained by engaging in worship, this Court does find that certain facilities and services provided by Defendant, i.e., access to the church which provided heating, air conditioning and electricity, do possess an exchangeable value. Such services were therefore supplied to the Debtors in exchange for tithes and offerings given to the Defendant church.
Additionally, informal counseling for the Debtors' business was provided by the Defendant. The Defendant church supplied contacts to potential employees and technical information regarding building and construction developments. This counseling, while informal, also possessed an exchangeable value. Such counseling is further evidence of property given in exchange for tithes and offerings.
Furthermore, no badges of fraud appear in the instant case. As was pointed out in Wilson v. Upreach Ministries (In re Missionary Baptist Foundation of America, Inc.), supra at 978 (Bankr.N.D.Tex.1982), even though fraudulent intent is not necessary for the existence of a fraudulent conveyance under § 548(a)(2)(A), in many cases a clear inference of fraudulent intent can nevertheless be made. See O'Connell v. Hoban (In re Famous State Fair Meat Products, Inc.), 19 B.R. 48, 50-51 (Bankr. E.D.Pa.1982); Daniels v. Keenen (In re Keenen), 19 B.R. 724, 730-31 (Bankr.W.D. Mo.1982); Butz v. Wheeler (In re Wheeler), 17 B.R. 85, 88 (Bankr.S.D.Ohio 1981); Greene v. Newman (In re Newman), 15 B.R. 658 (S.D.N.Y.1981); Consove v. Cohen (In re Roco Corp.), 15 B.R. 813 (Bankr.R.I. 1981); Stewart v. Hester (In re Hester), 14 B.R. 647 (Bankr.M.D.Tenn.1981); Goldberger v. Bross (In re Complete Drywall Contracting, Inc.), 11 B.R. 697 (Bankr.E.D.Pa. 1981).
Although fraudulent intent was not a necessary element to prove a § 548(a)(2)(A) transfer in such cases, badges of fraud were apparent in all of the above cases. As the court explained in In re Missionary Baptist Foundation of Am.,
Each involved a one-time transaction (or transfer which occurred over a relatively short period of time) to or through a relative or dominant shareholder of the debtor.
at 978.
In Missionary Baptist Found. of Am., the court held that payments made to religious charities which continued over a period of several years were not fraudulent conveyances. The court explained that since the badges of fraud which surrounded the circumstances in many § 548(a)(2)(A) cases did not exist, this was evidence tending to prove the fact that the transfer in question was not a fraudulent conveyance.
The court further explained that the question of whether reasonably equivalent value was given in exchange for the transfer was a "question of fact as to which considerable latitude must be allowed to the trier of fact." Id. at 979. See Klein v. Tabatchnick, 610 F.2d 1043 (2d Cir.1979); Cohen v. Sutherland, 257 F.2d 737 (2d Cir.1958). When answering the question of whether "reasonably equivalent value" had been given to the Debtor in return for the transfer, the court in In re Missionary Baptist Found. of Am. stated that § 548(a)(2)(A) does not require tangible value or a monetary equivalent. The court found that because the Debtor was a charitable organization itself formed to provide donations to other religious organizations, compliance with the mandate of incorporation and good will was exchanged for the questioned transfer. Such was thought to be "reasonably equivalent value" pursuant to § 548(a)(2)(A).
In the instant case, the consideration given is not so difficult to value. Services provided to the Debtors in the case at bar clearly constitute reasonably equivalent value. Furthermore, as in In re Missionary Baptist Foundation of America, no *820 badges of fraud appear with regard to the transfers now at issue.
Finally, this Court regards Plaintiff-Trustee's analogy between the instant case and tithing in terms of a Chapter 13 plan of bankruptcy as inappropriate. As a result, this Court finds that the Trustee has failed to meet his burden of establishing a fraudulent conveyance within the meaning of § 548(a)(2).
This Court need not consider the affect of today's decision on First Amendment rights guaranteed by the United States constitution. This Court has not delved into an examination of the beliefs of either the Debtors or the Defendant but has decided this case according to civil law. See Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969). Further, the decision of this Court does not favor Defendant and Debtors' religion over another. In fact, an inquiry into the religious beliefs of the Defendant or the Debtors is wholly unnecessary. Instead this Court has upheld the three major policies underlying religious freedom as articulated by the Second Circuit Court of Appeals as follows
voluntarism of religious thought and conduct, government neutrality towards religion, and the separation of church and state.
Brandon v. Board of Ed. Guilderland, 635 F.2d 971 at 974-5 (2d Cir.1980). It is thus that this Court has left unaltered the parties' First Amendment Rights by using civil law to determine that the transfers in question is not a fraudulent conveyance as defined by § 548(a).

ORDER
In accordance with the reasoning above, it is the Order of the Court that Plaintiff's attempt to recover certain transfers from the Debtors to the Defendant be, and the same hereby is, Denied.
An appropriate Judgment is entered contemporaneously herewith.