**In the matter of Melvin A. LAUGHLIN and Vaughn E. Laughlin, Debtors.**

**Norma BURTRUM, Plaintiff,**

v.

**Melvin A. LAUGHLIN and Vaughn E. Laughlin, Defendants.**

**Bankruptcy No. 80–01405.
Adv. No. 80–0264.**

United States Bankruptcy Court, W. D. Missouri, Southwestern Division.

Jan. 8, 1981.

As Corrected Feb. 6, 26, 1981.

Abe R. Paul, Pineville, Mo., for plaintiff.

R. J. Gordon, Pineville, Mo., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT DENYING THE DEFENDANTS' DISCHARGE IN BANKRUPTCY

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiff in this action complains that the defendant transferred property within a year preceding bankruptcy with the intent to hinder, delay, or defraud her within the meaning of § 727(a)(2)(A) of the Bankruptcy Code.

A plenary evidentiary hearing on the issues joined by the pleadings was held in Joplin, Missouri, on November 7, 1980. The plaintiff, appeared personally and by counsel, Abe R. Paul, Esquire, the defendant Melvin A. Laughlin appeared personally and by counsel, C. R. Rhoades, Esquire.

Evidence was taken and the case submitted on the basis of that evidence.

## I

The facts of this action are simple but quite compelling. The defendants owned, as of July 1979, a tract of land of considerable value.[1] They also owed the plaintiff an unsecured indebtedness of considerable magnitude,[2] which she had long but unsuccessfully attempted to collect from them.[3] At length, on or about July 13, 1979, she filed suit to collect the indebtedness in the Circuit Court of McDonald County. After the defendants had been served with summons in that action and thereby had actual knowledge of its pendency (a fact which the defendant Melvin A. Laughlin initially denied in his testimony in this action, but eventually admitted[4]) on August 1, 1979, Melvin A. Laughlin and his wife conveyed the subject real property to their son and daughter-in-law. The son and daughter-in-law subsequently transferred the property to the latter's parents.[5] Now owned by them, according to the defendant's testimony, it is neither occupied nor used by them nor by anyone else.[6]

The defendants do not deny any of the above and foregoing facts. But they contend that, in undertaking this transfer within a year of the filing of the petition herein for relief (which was filed on May 7, 1980), they had no intention to hinder, delay or defraud any creditor or the estate herein in bankruptcy. Rather, the defendant Melvin A. Laughlin states that he had, some time prior to July 1979, given over effective control of the property to his son and daughter-in-law because of his inability to make the $109.80 per month mortgage payments.[7] Accordingly, he states, his son took over the mortgage payments on the property far in advance of July 1979.

When asked why he chose August 1, 1979, (after he was served with summons in the state court action commenced by plaintiff), the defendant Melvin A. Laughlin answered that, previously, his wife had not been able to make the trip to the lawyer's office in town to execute the deed. In fact, as he explains it, she was not really well enough

---

1. The property in question is described in the complaint and elsewhere as the northeast quarter of the southeast quarter and the southeast quarter of the northeast quarter in section 3, township 21, range 30, county of McDonald, State of Missouri. According to the allegations and evidence, the property has a current fair market value in the vicinity of $40,000.

2. According to the allegations and evidence, the defendants became indebted to the plaintiff on account of a loan on October 16, 1978, in the sum of $30,592.80. The plaintiff took a security interest in certain personal property under the terms of the security agreement then executed by the defendants. The defendants, under the terms of the note, were to repay the indebtedness at the rate of $509.88 per month and at the rate of 10% per annum interest. The defendants did not make any payments against the note. The plaintiff then repossessed the personal property and liquidated it. But this left a deficiency of $14,205.93 plus accumulated interest and attorney's fees in the amount of $2,000, for which she instituted suit in the Circuit Court of McDonald County on July 13, 1979.

3. See note 2, *supra*. Additionally, Ms. Burtrum testified without contradiction to making several journeys to visit the defendants for the purpose of demanding payment.

4. After the testimonial denial of Melvin A. Laughlin that he had any knowledge of the pendency of the state court suit when he made the transfer of August 1, 1979, it was thereafter necessary, as a result of a telephonic conference with the clerk of the state court, for his counsel to admit by oral stipulation that service of summons and the complaint in the state case was had upon the defendants just prior to August 1, 1979, on July 25, 1979.

5. In his testimony, the defendant Melvin A. Laughlin identified the present titleholders of the property as his "youngest son's father-in-law and mother-in-law."

6. This seems to be a strange and incongruous fact in the light of evidence to the effect that the land is of great value.

7. This is so, the defendant Melvin A. Laughlin insists, even though, at the time of the relinquishment of control of the property, he owed only a relatively small amount on the balance due on the property (about $19,000, according to his testimony) which had vastly inflated in value from the time when he initially contracted to purchase it and the monthly payments were a modest $109.80. See note 8, *infra*.

on August 1, 1979, to make this trip, but, at his urging, she did it anyway. When they arrived at the lawyer's office in town, it was necessary that the instruments be presented to her as she sat in the car, for she was unable to walk into the office. Admittedly, the only consideration which the defendant received for the property was $1, when the appraised value was forty thousand times higher.[8]

The transfer of the property involved an equity in the defendant which otherwise would have been available to creditors and subject to any judgment lien obtained by the plaintiff as the result of the state court action.[9]

## II

On the basis of the foregoing facts, the applicable law requires that the discharge of the defendant in bankruptcy be denied. Section 727 of the Bankruptcy Code pertinently provides that it is grounds for denial of a discharge for a debtor, within the year next preceding bankruptcy, to have transferred property with the actual intent of hindering, delaying, or defrauding creditors.[10]

When it is shown, as in the case at bar, that the transfer within the year preceding bankruptcy has been to a relative for inadequate consideration during the pendency of a lawsuit against the transferor,[11] and in the absence of an explanation by the transferor sufficient to dispel these badges of fraud,[12] the court cannot escape the conclusion that the transfer was with intent to hinder, delay and defraud creditors and Ms. Burtrum in particular. Considering the appearance and demeanor of the defendant Melvin A. Laughlin in the course of his testimony, it must be concluded that his testimonial disavowal of any intent to hinder, delay, or defraud creditors is not worthy of credit.[13] Neither do the factual contentions which he makes sensibly explain why he chose a date after the filing of plaintiff's state court to make the conveyance (which he claims had actually been made before) a matter of official record. If anything, his testimony shows that his wife was as ill on August 1, 1979, as she had been previously and that, therefore, the decision to consummate the transfer must

8. According to the testimony of the defendant Melvin A. Laughlin, the purchase price of the property when he initially contracted to purchase it in 1956 was $1500. It has since been partially encumbered by another indebtedness which is currently being paid off. See note 7, *supra*. But the current value of the property is estimated at $40,000. See note 1, *supra*.

9. Only a comparatively small amount remained to be paid on the pre-existing mortgage at the time of the transfer, some $19,000.

10. "The court shall grant the debtor a discharge unless ... the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of the property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition." Section 727(a)(2) of the Bankruptcy Code.

11. "The combination of relationship (between transferor and transferee) and other persuasive indications of fraud may, under the circumstances of the case, suffice to show the fraudulent character of the transaction, as where, in addition to the fact of relationship, it further appears that the debtor retained possession after transfer or conveyance, or that he made the transfer pending or in anticipation of suit against him, that he acted in unusual haste, that by the conveyance he divested himself of all, or substantially all, his property, or that the transaction was not conducted in the usual mode or course of business." 37 C.J.S. *Fraudulent Conveyances* section 419, p. 1254.

12. As noted above, the explanation of the defendant Melvin A. Laughlin as to the timing of the transfer is not credible inasmuch as there is no reason to believe that his wife was less ill on August 1, 1979, than she had been previously.

13. "Because the Referee is in a superior position to make the proper determination of any issue of fact, it has been held that he has broad discretion in granting or refusing discharge." *In re Brown*, 314 F.Supp. 947, 954, 955 (W.D. Ark.1970), affirmed, 444 F.2d 49 (8th Cir. 1971). The rule is particularly applicable in a case such as that at bar, in which the issue of credibility of the parties is involved.

have been for another reason—and the filing of the state court action by plaintiff is the only palpable reason in evidence.

For the foregoing reasons, it must be concluded that the defendants transferred property within a year prior to bankruptcy with intent to hinder, delay and defraud a creditor within the meaning of § 727(a)(2)(A) of the Bankruptcy Code. The intentional character of the misconduct and the seriousness of its consequences require the denial of the defendants' discharge in bankruptcy.[14]

 The court notes that the plaintiff requests additional relief in her complaint herein in the form of an order avoiding the transfer. But this court does not purport now to determine the existence, character, or magnitude of the defendants' indebtedness to plaintiff [15] nor to nullify the transfer, nor render any judgment beyond the denial of a discharge. The resolution of those issues must necessarily await a suit in which the proper parties are joined.[16]

It is therefore, accordingly,

ORDERED, ADJUDGED AND DECREED that the discharge of defendants in bankruptcy be, and it is hereby, denied.

---

14. It is axiomatic that the showing of one or more of the grounds for denial of discharge is a necessary, albeit not a sufficient, condition for denial of discharge. It remains within the discretion of the court to determine whether discharge should be denied.

15. It is not necessary to determine in the action at bar any fact respecting the defendants' in-

debtedness to plaintiff other than the fact that such a debt existed (as is admitted) at the time of the transfer.

16. In order to nullify the transfer, it is necessary to join the current titleholders of the property. See note 5, *supra*.