**In re Burnard J. & Nona M. BARNEY, Debtor(s).**

**Michael P. COGAN, et al., Plaintiff(s),**

v.

**Burnard J. BARNEY, Jr., et al., Defendant(s).**

**Bankruptcy No. 85–0335.
Related Case: 85–01764.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

March 24, 1987.

---

Samuel J. Nugent, Toledo, Ohio, for plaintiffs.

Joseph M. D'Arcangelo, Toledo, Ohio, for defendants/debtors.

L. Mari Taoka, Toledo, Ohio, Trustee.

John J. Hunter, Toledo, Ohio, for Production Credit.

### MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after Trial on Plaintiff's consolidated Complaints. Discovery has been conducted on this matter, and stipulations of fact have been submitted to the Court. The parties have filed written Memoranda and Briefs respecting the merits of the Complaints, and have had the opportunity to respond to the arguments of opposing counsel. At trial, the Plaintiffs and Defendants had the opportunity to call witnesses and present their arguments and evidence to the Court. The Court has reviewed the written arguments, and the entire record in this case. Based upon that review, and for the following reasons, the Court finds that Plaintiffs' Complaints should be DENIED.

### FACTS

With few exceptions, the facts necessary for this decision do not appear to be in serious dispute. The basis of this action is an attempted transfer of property by the

Debtors, Burnard Barney, Jr. and Nona Barney. The property in question includes a two story frame house and approximately three acres of land. Burnard Jr. and Nona Barney, hereinafter "the Barney Jr.'s", acquired the property under a land contract executed on April 6, 1974. The land contract vendors were Burnard Barney, Sr. and Blanche Barney, hereinafter "the Barney Sr.'s". On August 21, 1982, a new land contract was executed between the same parties, under slightly different terms. At all relevant times the Debtors, the Barney Jr.'s, made the payments required by the land contract. The matters before the Court arise from the "repossession" of this property, within 120 days of bankruptcy, for failure to keep the property in good repair.

Approximately five years prior to the filing of the petition, Michael P. Cogan loaned the Barney Jr.'s about $10,000. Testimony shows that the decision to make the loan was arrived at mutually by Mr. Cogan and Mr. Barney, Jr., for what they thought would be the benefit of both. The loan was for Mr. Barney Jr.'s farming activities. At the time of the loan, no security interest was requested, or given. The agreed interest rate on the loan was 14%.

At some date after Mr. Cogan's loan, one of Mr. Barney's sons was involved in a swimming accident which left him paralyzed. As a result, the Barney Jr.'s incurred medical expenses and monies were expended to make their home barrier free for their son.

On December 21, 1983, the Debtors executed and delivered a promissory note in the amount of $13,937.00 to the Plaintiff, Mr. Cogan. The Barney Jr.'s defaulted on the repayment of the promissory note and, on January 29, 1985, the Plaintiff obtained a judgment against the Debtors. The judgment was in the amount of $14,488.14 with interest at 14% per annum.

The property was "repossessed" on September 18, 1985, when the Barney, Jr.'s signed a quitclaim deed in the office of the Barney, Sr.'s attorney, who had also prepared the deed at Mr. Barney, Sr.'s request. The testimony at Trial, by Mr. Barney, Jr. and Mr. Barney, Sr., was that the property was "repossessed" primarily because the house had deteriorated due to a leak in the roof. The land contract called for the Barney Jr.'s to maintain the property "in as good as condition as they now are, ordinary wear and tear excepted." Testimony showed the condition of the house to be "deplorable".

Mr. Barney, Jr. testified that he did not know, at the time of the "repossession", anything about the principle of equity under a land contract.

Both Mr. Barney, Jr. and Mr. Barney, Sr. testified that it was Mr. Barney, Sr.'s idea to take back the property. Mr. Barney, Jr. stated that his father had mentioned to him that he would take the property back. Mr. Barney, Sr. said he had never spoken to his son about the "repossession". They both stated that they never discussed the subject of bankruptcy. When asked about his motive for seeking the return of the property, Mr. Barney, Sr. testified that he was very concerned about the deterioration of the house, and, also, he wanted to insure that his disabled grandson always had a place to live.

The parties have stipulated to the fact that the Debtors were insolvent at the time of the attempted transfer, or became insolvent because of the transfer.

After the "repossession", the Barney, Jr.'s continued to live on the property and paid "rent" to Mr. Barney, Sr. Mr. Barney, Jr. and Mr. Barney, Sr. undertook the repair of the roof, which was the area in need of immediate attention. Plaintiffs noted that the materials for the repairs cost less than three hundred dollars, while, in comparison, the payments for rent were almost one hundred and fifty dollars a month more than the payments under the land contract. The Debtors pointed out that the rent included heat, which was not covered when the land contract was in effect, so the actual monthly costs were substantially the same.

After the execution of the quitclaim deed, Mr. Cogan made two attempts to collect on his judgment. Mr. Barney, Jr.'s wages were garnished and the Debtors

bank account was attached. Mr. Barney, Jr. testified that this was when he first discovered that there was a judgment against him. The Court finds Mr. Barney, Jr.'s testimony on this matter to be implausible. Notice must be presumed, particularly when Mr. Barney, Jr.'s lawyer's signature is affixed to the judgment. Mr. Barney, Jr. further stated that it was only after the attachment and garnishment that he and his wife began to contemplate bankruptcy.

The Debtors filed their bankruptcy petition on October 30, 1985. At the time of the filing, the quitclaim deed had not been recorded. The deed was recorded on November 13, 1985. The Debtors filed their initial B-1 schedules on November 13. The Barney, Jr.'s listed the attempted transfer of the residential property under question No. 13, which asks the Debtor to list any property repossessed in the year immediately preceding the filing of the petition. Under question 12(b), which asks the Debtor to list all transfers of real property within the past year, the Debtor answered "none". It should be noted that the Debtors did have several items of farm equipment repossessed, and had also listed them under question No. 13. Debtor's attorney told the Court that it was his inexperience in bankruptcy matters which was largely responsible for the error. Although this may be true, the parties have stipulated to the validity of the Debtors' signature on the schedules.

On December 4, 1985, the first meeting of creditors was held. The Debtors attended and, through their attorney, fully disclosed the attempted conveyance of property to the Barney Sr.'s. The transcript shows that Debtors' attorney stated that they realized that the unrecorded quitclaim deed was of no effect and that they would not oppose having the deed set aside in some action by the Trustee or creditors.

On December 13, 1985, the Debtors amended their B-1 schedule to reflect their equitable interest in the residential property under the land contract. At the same time, they also filed for the homestead exemption in an amendment to their B-4 schedule.

Michael Cogan has filed two adversary actions seeking to deny discharge. Production Credit Association, hereinafter "PCA", which also made a loan to the Barney, Jr.'s, joins in asking for a denial of Debtor's discharge. PCA's Complaint has been consolidated with that of Mr. Cogan for Trial. PCA asks for denial of the discharge under 11 U.S.C. § 727 because the property was conveyed within one year of the filing of the petition for inadequate consideration, and that the transfer was made with intent to hinder or delay administration of the assets for the benefit of creditors. The Complaint also asks for denial of the discharge under § 727(a)(3) and § 727(a)(4)(A).

The Cogan Complaint does not specifically denominate the sections of the Code under which the discharge should be denied. The Complaint appears to generally follow the PCA Complaint in alleging fraud, false oaths, intent to hinder and delay creditors, and failure to explain loss of assets. The Complaint prays for nondischargeability of the debt owed to Mr. Cogan, apparently under 11 U.S.C. § 523.

On June 2, 1986, the Court granted a Motion for Default Judgment on the Trustee's Complaint to Void Transfer of Real Estate. Plaintiffs' counsel objected, at Trial, to the designation of the transfer as "void". The Plaintiffs desired to have the transaction described as "voidable" and "fraudulent", despite the Trustee's belief that it was not.

Plaintiffs rely primarily on *Matter of Laughlin*, 7 B.R. 924, 3 C.B.C.2d 552 (Bankr.W.D.Mo.1981) and *Matter of Kock*, 20 B.R. 453, 6 C.B.C.2d 849 (Bankr.D.Neb. 1982). The Defendant–Debtors cite to *In re Adeeb*, 787 F.2d 1339 (9th Cir.1986).

## LAW

The provisions of 11 U.S.C. § 727(a)(2)(A) state:

§ 727. Discharge

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition;

■ The Plaintiffs have the burden of proof in this matter. Bankruptcy Rule 4005 provides:

At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving his objection.

The Plaintiffs must prove their case by clear and convincing evidence before the discharge will be denied. *In re Martin*, 761 F.2d 1163, 1165 (6th Cir.1985); *In re Lineberry*, 55 B.R. 510 (Bankr.W.D.Ky.1985) 4 *Colliers on Bankruptcy* (15th ed.) ¶ 727.[6].

Plaintiffs' cite *Matter of Laughlin*, 7 B.R. 924 (Bankr.W.D.Mo.1981) in support of their argument that the attempted transfer of property should be found to have been made with the "intent to hinder, delay or defraud a creditor". The *Laughlin* case does closely parallel the case at bar. In *Laughlin*, there was a conveyance of property during the pendency of a state court proceeding to collect a large debt. The transfer was for inadequate consideration, to a family member, and within one year of filing their petition for relief. The Court found the absence of an explanation by the transferor insufficient to dispel the "badges of fraud". Using the badges of fraud rationale, the Barney Jr.'s purported "repossession" could be viewed as being worse, since the Barney, Jr.'s remained on the property after the signing of the quitclaim deed. However, there are differences, and one critical distinction, which prevent the Court from denying the Debtors' discharge.

■ One difference between the two cases is the land contract between the Barney, Jr.'s and Barney, Sr.'s. It is a standard form contract which calls for the

vendee to maintain the property being sold. Failure to comply with any of the terms and conditions, including, presumably, the maintenance clause, allows the seller to terminate the agreement. Although the land contract terms are not controlling in this case because of provisions of Ohio law and the Bankruptcy Code, the actions taken were, at least colorably, done under the terms of the contract. Secondly, unlike *Laughlin*, it does not appear to the Court, from the testimony presented, that the attempted transfer of the property was entirely the Debtors' idea. Mr. Barney Sr. instituted the "repossession" of the property, rather than the Debtors. It appears to the Court that the "intent to hinder, delay or defraud a creditor" must be the intent of the Debtor. In this case, though the Court does not find all the testimony of the Barneys credible, there is still some doubt as to the intent of Mr. Barney, Jr. to "hinder, delay and defraud". *See* 4 *Collier on Bankruptcy* (15th Ed.) ¶ 727.02[3].

■ As stated above, there is one critical distinction between *Laughlin* and the matter before the Court. The full disclosure of the conveyance at the first meeting of creditors makes the denial of discharge inappropriate under existing case law when the property in question has been recovered and returned to the estate. *In re Adeeb*, 787 F.2d 1339 (9th Cir.1986); *In re Waddle*, 29 B.R. 100 (Bankr.W.D.Ky.1983); *In re Wolmer*, 57 B.R. 128 (Bankr.N.D.Ill.1986); *Thompson v. Eck*, 149 F.2d 631 (2d Cir. 1945); *In re Doody*, 92 F.2d 653 (7th Cir. 1937); 4 *Collier on Bankruptcy* (15th ed.) ¶ 727.02[6][b]. There are strong policy reasons underlying these decisions. As stated in *In re Adeeb*:

We are also persuaded by practical considerations that a discharge should not be denied in the present situation. It is not uncommon for an uncounseled or poorly counseled debtor faced with mounting debts and pressure from his creditors to attempt to protect his property by transferring it to others. Upon later reflection or upon obtaining advice from experienced bankruptcy counsel, the debtor may realize that his original

transfer of the property was a mistake. If the debtor is informed that his mistake bars him from a discharge in bankruptcy, he will have no incentive to attempt to recover the property or to reveal its existence to his creditors. Rather, he will have a strong incentive to continue to hide his assets ...

We conclude that a debtor who transfers property within one year of bankruptcy with the intent penalized by section 727(a)(2)(A) may not be denied discharge of his debts if he reveals the transfers to his creditors, recovers substantially all of the property before he files his bankruptcy petition, and is otherwise qualified for a discharge.

787 F.2d at 1345.

In the case at bar, the transfer was void and the property was, therefore, part of the estate. The failure to record the quitclaim deed caused the Debtors' equitable interest in the property to become part of the estate upon the filing of the petition. 11 U.S.C. § 541(a)(1).

■ The *Adeeb* Court made discharge mandatory when the debtor recovers substantially all of the property before he files his bankruptcy petition. Even if the property were not recovered prior to the filing of the petition, full disclosure at the first meeting of creditors, combined with the present ability to recover substantially all of the property, should give rise to a rebuttable presumption in favor of discharge. In overturning the decisions of the Bankruptcy Court and the District Court, it does not appear that the *Adeeb* Court intended to undercut the Second Circuit decision in *Thompson v. Eck,* a case tried before a three Judge panel that included Judge Learned Hand. In *Thompson,* the Court stated a more general rule on fraudulent intent:

Finally the fact that all these transactions were revealed at the first meeting of creditors also tends to indicate that the intent was not fraudulent.

149 F.2d 631, 634 (2d Cir.1945).

The policy reasons which underpin the *Adeeb* decision, also support a rebuttable presumption which extends beyond the filing of the petition. Filing is often done in haste, without the time for "reflection" or in depth "advice of counsel". *See Adeeb* at 1345, *supra.* In the bankruptcy process, the first meeting of creditors is, in many ways, the moment of "truth" for the debtors. It is the opportunity for full disclosure. It appears that the incentive for the debtor to disclose all transfers, or attempted transfers, should continue beyond the filing of the petition. This is provided under the more general *Thompson* inference. No purpose is served in giving debtors a strong incentive to "stonewall" creditors, or in giving creditors an incentive to delay the final transfer of assets until after the filing of the petition.

A rebuttable presumption would also prevent inequitable results based on the choice of counsel. In the case at bar, Counsel for the Debtors stated that he was inexperienced in the bankruptcy area at the time he filed the petition. Although Debtors' counsel did acquire the required knowledge of the law in this area, it seems inequitable to penalize Debtors for retaining an attorney who did not know of the *Adeeb* decision at the time of filing, or, in this case, did not anticipate what the criteria for mandatory dischargeability would be when *Adeeb* was decided.

■ Plaintiffs also allege false oaths by the Debtors under 11 U.S.C. § 727(a)(4)(A), which states in pertinent part:

The court shall grant the debtor a discharge, unless ...

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account ...

Again, the Plaintiffs have the burden of proving their case by clear and convincing evidence. 4 *Collier on Bankruptcy* (15th ed.) ¶ 727.14[6].

■ It is important to note that the Debtors did list the attempted transfer of the property on their schedules, albeit under "repossessions". This fact, when considered in conjunction with the disclosure at the first meeting of creditors, leads the Court to the conclusion that the Debtors error has not been shown to have been

made "knowingly and fraudulently". While major improprieties cannot be permitted, this case does not rise to that level. Any creditor who scanned the entire schedule would have had some notice that real property had been owned by the Debtor within a year of the filing of the petition. This was certainly not "good notice". But with the disclosure of the attempted transfer at the first meeting of creditors, and the amendments of the schedules, denial of Debtor's discharge is not warranted. *In re Ellingson*, 63 B.R. 271 (Bankr.N.D. Iowa 1986).

The Plaintiffs put forth no evidence which would show the Debtors engaged in activities which would allow the Court to deny discharge under 11 U.S.C. § 727(a)(3).

■ Finally, Mr. Cogan's assertion that the Barney, Jr.'s indebtedness to him should be excepted from discharge, under 11 U.S.C. § 523, is without merit. No proof of "false pretenses, a false representation, or actual fraud" has been offered in connection with the loan from Mr. Cogan to Mr. Barney, Jr. Testimony by Mr. Cogan showed that the loan was not, in any way, obtained by fraudulent means. The loan was consensual, and both parties expected to benefit through, in essence, cutting out the "middleman", which in this case would be the bank. Mr. Barney, Jr. could not know that farming would become less profitable or that his son would sustain a crippling injury. Accordingly, Mr. Cogan has failed to establish grounds for an exception from discharge.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that Plaintiffs' Complaints in Adversary Cases 85–0335 and 85–0336 are DENIED.

It is FURTHER ORDERED that Plaintiff's Complaint in Adversary Case 86–0030 be DENIED as to the issue of the Debtors' Discharge.